134 N.J. Super. 537 (1975)
342 A.2d 513
CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY, A FOREIGN CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 1975.
Decided June 12, 1975.
*541 Before Judges CARTON, CRANE and KOLE.
Mr. Wilbur A. Stevens argued the cause for appellant (Messrs. Stevens and Mathias, attorneys).
Mr. Salvatore Perillo, First Assistant Corporation Counsel, argued the cause for respondent (Mr. Milton A. Buck, Corporation Counsel-City of Newark, attorney).
The opinion of the court was delivered by KOLE, J.A.D.
A complaint was filed in the United States District Court by four individuals, Capelas, Lopez, Israel Santiago and Johnny Santiago, against, among others, Keegan, Keogh and Romaniello, police officers of the City of Newark. To the extent here relevant, the complaint charged violations under color of law of the civil rights of the plaintiffs by these police officers under the Federal Civil Rights Act, 42 U.S.C.A. § 1983 et seq. It claimed that the police officers unlawfully arrested, searched, detained, imprisoned, assaulted and battered, and conspired to, and did, maliciously prosecute Lopez and the Santiagos. It also *542 charged that Keegan refused and neglected to prevent the commission of these acts although knowing of the conspiracy to commit them. Claims were made for compensatory and punitive damages.[1] Apparently Keegan, Keogh and Romaniello answered in the federal court through personal counsel, although at oral argument we gained the impression that the city either had undertaken their defense or had assigned counsel for that purpose.
At the times involved by the federal action defendant Hartford Accident & Indemnity Company (Hartford) had in effect a liability insurance policy designating as "named assureds" the "City of Newark Police Department, City of Newark, Police Director of City of Newark, Mayor of the City of Newark, Arson Squad (17 members) of City of Newark and Judges and Clerks of Newark Municipal Courts." The policy also describes as an "insured" a named insured designated in the declarations as (1) an individual, (2) a partnership or joint venture, including any partner or member but only with respect to his liability as such, and (3) any other "organization," including any executive officer, director or stockholder thereof while acting within the scope of his duties as such.
The coverage provided personal injury liability to the extent of $100,000 each person "aggregate" and $300,000 total "general aggregate." The policy expressly provides that the carrier will pay on behalf of the "insured" all sums which the insured shall become legally obligated to pay as damages because of injuries sustained by any person arising *543 out of one or more of the following offenses committed in the conduct of the "named insured's business": false arrest, detention or imprisonment or malicious prosecution, and assaults and batteries committed or alleged to have been committed at the time of making or attempting to make an arrest or in resisting an overt attempt to escape by a person under arrest. It excludes from coverage all claims arising as a result of any act on the part of "the assured" after the claimant has been placed in jail or other place of lawful confinement.
The insurance carrier under the policy has the "right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent." In addition to assaults or batteries occurring while a person is in lawful confinement, the policy excludes coverage for personal injuries arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge and consent of an insured or arising out of riot, civil commotion or mob action or any act or omission in connection with the prevention or suppression of the same. A $5,000 deductible with respect to each claim to be paid by the insured is provided and under no circumstances is the carrier required to pay in excess of the $300,000 "general aggregate."
The premium paid for the insurance coverage by plaintiff city is not insubstantial. It is about $216,000 for a three-year period.
The city instituted this action seeking a declaration of coverage to the individual policemen defendants in the federal civil rights action and requiring the insurer to provide them with a defense. The trial judge, on motion for summary judgment by plaintiff, ordered Hartford to defend the police officers for "any offenses alleged in the complaint" in the federal court action which are covered by the policy and "enumerated therein."
*544 Hartford appeals the judgment against it on a number of grounds. We discuss them, but not necessarily in the order presented.
We agree with the conclusion of the trial judge that the individual policemen are named insureds and are covered by the policy.
Where, as here, a policy is susceptible of two reasonable interpretations as to coverage, the one favorable to the insured will be adopted if in accordance with the latter's reasonable expectations. Bryan Constr. Co. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375 (1972); Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970). The present policy expressly designated the "City of Newark Police Department" as a named assured. There is no evidence that the police department is an entity capable of being sued. An action against the police department would have to be brought against the city. It is redundant to have listed both the city and the police department, unless the policy was meant to provide coverage for individual members of the department.
Here, it is within the reasonable expectations of the insured, considering the policy language and purpose, that the individual members of the police department would be covered, and any suit against them would be defended by the carrier and awards of damages against them would be paid by the carrier to the extent that the policy, consistent with its language and public policy, covers the claims asserted against the individual policemen. See Caplan v. Johnson, 414 F.2d 615 (5 Cir.1969); Baltzar v. Williams, 254 So.2d 470 (La. App. 1971); Estrada v. Indem. Ins. Co. of N. Am., 158 Cal. App.2d 129, 322 P.2d 294 (Dist. Ct. App. 1958).
We are also satisfied that, at least as to the obligation to defend, the trial judge properly held that the claims asserted in the federal action under the Civil Rights Act are covered by the insurance policy, to the extent that they are "offenses" mentioned in the policy and allege common *545 law torts under state law  e.g., false arrest, detention or imprisonment, malicious prosecution, and assault and battery  even though recovery is sought under the federal act and in the federal court. The carrier could have excluded from coverage civil rights actions or limited coverage to common law torts, but it did neither. See 42 U.S.C.A. §§ 1983, 1988; Howell v. Cataldi, 464 F.2d 272 at 277-279 (3 Cir.1972); Caplan v. Johnson, supra; Colton v. Swain, 358 F. Supp. 859 (N.D. Ill. 1973), app. dism. 495 F.2d 1375 (7 Cir.1974); Peoria v. Underwriter's at Lloyd's London, Unincorporated, 290 F. Supp. 890 (S.D. Ill. 1968).
The court below correctly held that in the present case the determination of the basic duty of the carrier to defend should be made by comparing the torts alleged in the federal complaint with the "offenses" (i.e., torts) listed in the coverage provisions of the policy. See Burd v. Sussex Mut. Ins. Co., 56 N.J. 383 (1970); Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29 (App. Div. 1973), aff'd o.b. 65 N.J. 152 (1974).
We are not here dealing with a clause of a policy which excludes coverage for intentional acts. This policy deliberately covers specific intentional acts that are alleged in the federal action complaint. Premiums have been paid for such coverage. There is no showing that the exclusions as to injuries arising out of a willful violation of a penal enactment or a riot or any other exclusion are at all applicable. None of the policemen has been found guilty in any penal proceeding involving these acts. Compare Burd v. Sussex Mut. Ins. Co., supra. The only factual issues here to be decided relate to the extent of the basic obligation to defend and the duty to pay the compensatory damages awarded in the federal action  i.e., the extent to which the torts there involved and damages awarded therefor are covered by the policy and should be defended and paid by the carrier. With respect to those issues the carrier is entitled to a plenary hearing. But that hearing should not delay the defense of the federal action or bar a determination now of the carrier's *546 basic duty to defend that action or to pay for its appropriate share of the expense of such defense. We have concluded that under the circumstances here such a plenary hearing with respect to the extent of the duty to defend and pay should await the outcome of the federal action. See and compare Burd, supra; Raday v. Manville Bd. of Ed., 130 N.J. Super. 552 (App. Div. 1974); Lyons v. Hartford Ins. Group, 125 N.J. Super. 239 (App. Div. 1973), certif. den. 64 N.J. 322 (1974); Hanover Ins. Group v. Cameron, 122 N.J. Super. 51 (Ch. Div. 1973). The trier of fact in that action should be requested to answer specific interrogatories which may assist in determining the extent of the carrier's duty to defend and pay under the policy. This may facilitate the resolution of the later proceeding although, of course, the carrier would not necessarily be bound by any such findings.
The carrier contends that if it is made to defend the federal action, state public policy would be offended. We question but need not now decide whether the carrier may seek refuge in this kind of defense where it issued the insurance policy covering the specific intentional acts and collected premiums therefor. Nevertheless, we presently see no merit to the public policy argument.
Insurance policies providing for indemnity to an insured against the civil consequences of his own willful criminal acts or injuries to others that he actually intends have been held to violate public policy. But here other values are involved. The duty to defend and pay is limited to the specific intentional "offenses" committed in the course of the policemen's "business." With appropriate further limitations, there would appear to be no public policy problem. Thus, for example, a defense or indemnification should not be permitted for an act that constitutes a crime or involves actual malice or other outrageous conduct, or for an act outside the scope of the policemen's employment. The New Jersey Tort Claims Act, N.J.S.A. 59:2-1 et seq., applicable when these alleged torts were committed, may also have some relevance to the public policy issue. The extent of its applicability, however, *547 has not been argued before us and we accordingly merely mention it. See, e.g., N.J.S.A. 59:2-1, 59:2-2; 59:3-1; 59:3-8; 59:3-14; 59:10-4. Compare N.J.S.A. 59:10A-1 et seq. See also, N.J.S.A. 40A:14-155.
The municipality has an interest in assuring that its policemen, who are engaged in a hazardous enterprise that likely may lead to the kinds of offenses alleged in the federal action, are protected, at least to the extent of being provided a defense by an insurance carrier, for torts of this nature committed within the scope of its and their business. Even though the city is not vicariously liable for such torts under the Civil Rights Act, see Howell v. Cataldi, supra, it also has an interest in endeavoring to secure indemnification to such employees for damages arising from such torts, except, of course, where that is prohibited by law or public policy. Compare Malanga v. Mfrs. Cas. Ins. Co., 28 N.J. 220 (1958), and the New Jersey Tort Claims Act, supra.
Public policy would not preclude indemnification or a defense with respect to compensatory damages awarded against the policemen for the "offenses" covered by the policy, where the injury suffered is the unintended or only the probable result of the intentional act, or where the act is within the scope of the policemen's employment. It would plainly not permit a defense or indemnification by the carrier of any claim for punitive damages. The scope of other prohibited defenses or indemnification is not as clear as it might be and need not now be decided. It may await a plenary trial of this declaratory judgment action after the civil rights action is concluded. See Burd v. Sussex Mut. Ins. Co., supra; Ruvolo v. Am. Cas. Co., 39 N.J. 490 (1963); Lyons v. Hartford Ins. Group, supra; LoRocco v. N.J. Mfrs. Indem. Ins. Co., 82 N.J. Super. 323 (App. Div. 1964), certif. den. 42 N.J. 144 (1964). See also Hanover Ins. Group v. Cameron, supra; Raday v. Manville Bd. of Educ., supra, and the New Jersey Tort Claims Act, supra.
For present purposes we need only hold that an insurance policy such as that issued here by Hartford to the *548 municipality does not per se offend public policy simply because Hartford has therein undertaken the basic duty to defend municipal policemen and pay for damages awarded against them in an action for intentional acts described in the policy, as long as those duties are limited as we have indicated. See and compare Newport Beach v. Sasse, 9 Cal. App.3d 803, 88 Cal. Rptr. 476 (D. Ct. App. 1970); Ohio Farmers Ins. Co. v. Landfried, 348 F. Supp. 486 (W.D. Pa. 1972); Colton v. Swain, supra; Peoria v. Underwriter's at Lloyd's London, Unincorporated, supra; Caplan v. Johnson, supra.
Accordingly, we have concluded that Hartford has the basic duty to defend the individual policemen in the federal action for the torts committed while acting in the business of the police department that are within the expressly covered offenses insured against. However, for the reasons hereafter set forth, the extent of that duty may not be determined in a summary judgment proceeding and must await a plenary hearing in the present action.
We do not believe that our holding is in conflict with the principles established in Burd, Lyons or Raday, supra. Unlike those cases, we are concerned with an insurance policy specifically covering the torts for which damages are sought, and the situation is one which involves both (1) matching the torts alleged with those expressly included in insurance policy coverage and (2) issues of fact as to coverage. In our view, the basic duty to defend is evident and the only remaining question in that area is the extent or cost thereof. Whatever conflict of interest there may be in the carrier's defending the federal action may be resolved as indicated below.
There are charges in the federal complaint, such as extortion, which are not covered by the policy and must be defended by private counsel. The claims for punitive damages should not be defended by the carrier, even though conceivably we might assume, by reason of the present action by the city, that the policemen are willing to undertake *549 that risk. See LoRocco v. N.J. Mfrs. Indemn. Ins. Co., supra, 82 N.J. Super. at 333. There is a possible conflict of interest between the policemen and the carrier even with respect to compensatory damages for the offenses covered by the policy  e.g., whether the injury is the result of the kind of intentional act for which coverage may be provided by law. There is also the question of the extent to which the cost of the defense should be paid by the carrier and policemen, respectively, as well as the reasonableness of the amount of such cost to be assessed against the carrier. And, of course, there is the issue of the amount of indemnification to be paid if damages are recovered in the federal action.
Under these circumstances, we think the prudent course is to have the policemen's personal counsel undertake the actual defense of the federal action, with the carrier's attorney available to protect its interests under the policy. After that action is terminated, the present declaratory judgment action should proceed to trial and all of the questions we have mentioned should be determined therein.[2] See Hanover Ins. Group v. Cameron, supra, 122 N.J. Super. at 68.
We have considered Hartford's remaining contentions and find them to be without merit. The Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq., permits the state court to determine the coverage issue, even though a federal Civil Rights Act action is involved. The court is in no way thereby invading the power of the federal judiciary. Although the better practice might have been for the policemen to bring in Hartford as a third-party defendant in the federal court action, they were not required to do so. The city has an adequate interest to institute this action on their behalf. Additionally, during oral argument we were *550 advised that the carrier is taking the same view as to noncoverage in actions instituted in the state courts against the city's policemen. The issue here raised should, therefore, be resolved.
That another carrier having this kind of insurance with the city may have viewed it as covering only the city's vicarious liability is not dispositive of the issue of coverage or the duty to defend under this policy. Nor is the city's inter-office memorandum as to the interpretation of the present policy, relied on by Hartford, in any way conclusive on these matters.
To the extent that the summary judgment determines that the basic duty to defend the federal action is that of Hartford, it is affirmed. In all other respects it is reversed, and the matter is remanded for plenary hearing after the federal action has been completed, in accordance with this opinion.
NOTES
[1] Capelas claimed damages for extortion against Keogh and Romaniello. This claim is plainly not covered by the insurance policy here involved and need not be defended by the carrier, nor need a judgment in Capelas' favor be paid by it.

Since the civil conspiracy claim does not enlarge the federal court plaintiffs' cause of action, at least as to compensatory damages under state tort law, it would appear to be covered by the policy to the extent it involves the underlying wrong for which coverage is afforded. See Lopez v. Swyer, 62 N.J. 267, 276 (1973).
[2] If the question of settlement arises at the federal trial that matter, of course, may present problems which will have to be then resolved. See Rova Farms Resort Inc. v. Investors Ins. Co., 65 N.J. 474 (1974), and concurring opinion at 508.