Josephine VARGAS, Martin Ellerbee, Marion Gargiulo, Joann Wheeler, Janice Sellers, Maria Rivera, Margarita Gonzalez, Appellants in No. 91–5049

v.

HUDSON COUNTY BOARD OF ELECTIONS, Hudson County Superintendent of Elections, Gerald McCann, individually and in his official capacity as former Mayor of the City of Jersey City, Matthew Burns; John Finn, Mark Munley.

Hudson County Superintendent of Elections, Appellant in No. 91–5048.

Hudson County Board of Elections, Appellant in No. 91–5051.

Gerald McCANN

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA; J.R. Insurance Brokerage, Inc., and Johnson Excess Limited.

John J. FINN

v.

J.R. INSURANCE BROKERAGE, INC., Johnson Excess Limited, and National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

Mark MUNLEY

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, J.R. Insurance Brokerage, Inc., and Johnson Excess Limited.

Matthew BURNS

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, J.R. Insurance Brokerage, Inc., and Johnson Excess Limited,

National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Appellant in No. 91–5029.

Nos. 91–5029, 91–5048, 91–5049 and 91–5051.

United States Court of Appeals, Third Circuit.

Argued Aug. 15, 1991.

Decided Nov. 20, 1991.

As Amended Dec. 4, 1991.

Rehearing and Rehearing En Banc Denied Jan. 3, 1992.

William J. Prout, Jr. (argued), George Gerard Campion, Gina J. Giongrete, Tompkins, McGuire & Wachenfeld, Newark, N.J., Michael B. Wallace, Luther T. Munford, Phelps Dunbar, Jackson, Miss., for Nat. Union Fire Ins. Co. of Pittsburgh, Pa.

Samuel Issacharoff (argued), Austin, Tex., Barbara Arnwine, Frank Parker, Lawyers Committee for Civil Rights Under Law, Washington, D.C., Juan Cartagena, Ruben Franco, Arthur Baer, Puerto Rican Legal Defense & Education Fund, New

York City, for Josephine Vargas, Martin Ellerbee, Marion Gargiulo, Joann Wheeler, Janice Sellers, Maria Rivera and Margarita Gonzalez.

Harold J. Ruvoldt, Jr. (argued), Ruvoldt & Ruvoldt, P.A., Joseph P. Healy, Jersey City, N.J., for Gerald McCann.

Morris M. Schnitzer (argued), Roseland, N.J., Gilbert W. Bowman, Bruinooge & Associates, Rutherford, N.J., for Mark Munley.

Robin B. Horn, Saiber Schlesinger Satz & Goldstein, Newark, N.J., for Matthew Burns.

Clifford A. Herrington (argued), Margulies, Wind, Herrington & Katz, Jersey City, N.J., for Hudson County Bd. of Elections.

Arthur L. Porter, Jr., (argued), Allan H. Klinger, Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, Roseland, N.J., for Hudson County Superintendent of Elections.

John J. Sheehy (argued), Sheehy & Sheehy, Jersey City, N.J., for J.R. Ins. Brokerage, Inc.

Before COWEN, NYGAARD, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal we determine that attorney's fees owed to a third-party were an element of damages sought by an indemnitee and, therefore, earlier rulings by the district court did not become appealable until an order quantified those fees. We also conclude that the district court did not err in finding that an insurer owed coverage for civil rights violations allegedly committed by its insured political campaign committees. However, we reverse an order granting a contingency enhancement of attorney's fees because the record establishes that the attorneys sought out the class representatives to bring the action.

The plaintiff class, consisting of certain citizens in Jersey City, New Jersey, filed a complaint alleging a conspiracy to prevent

them from voting in an election for mayor of the City. Included as defendants were Gerald McCann, a candidate for mayor, and members of his campaign staff, Mark Munley, Matthew Burns, and John Finn,[1] as well as the Hudson County Board of Elections and the Superintendent of Elections.

The National Union Fire Insurance Company, which had written a general liability policy at the request of the McCann campaign committees, refused to defend or indemnify the individual defendants. The McCann defendants joined National Union as a third-party defendant, alleging that it had breached its duties under the policy. Also included as third-party defendants were Johnson Excess, Ltd. and J.R. Insurance Brokerage, Inc. The district court severed the third-party action from the class suit.

In due course, the district court granted summary judgment against National Union declaring that it owed coverage to the McCann defendants. The court, however, also left some issues in the third-party action to be resolved after trial of the class claims. *Vargas v. Calabrese*, 714 F.Supp. 714, 725–26 (D.N.J.1989).

Soon afterward, the McCann defendants settled the class plaintiffs' case. The court approved the settlements and after a hearing concluded they were enforceable against National Union. On April 24, 1990, the district court ordered National Union to indemnify the McCann defendants for the amounts of the settlements and for "the amount of any attorneys' fees award which may be made in favor of [class] plaintiffs and/or plaintiffs' attorneys against the [McCann] defendants." In addition, the court ordered National Union to reimburse those defendants for their own attorneys' fees.

On December 13, 1990, the district court entered an attorneys' fees and expense award in favor of the plaintiff class directing that two-thirds be paid by the McCann defendants and one-third jointly by the Hudson County Board of Elections and the County Superintendent of Elections. *Var-*

---

**1.** All claims relating to John Finn have been     settled and will not be discussed in this opinion.

*gas v. Calabrese,* 750 F.Supp. 677, 690 (D.N.J.1990).

National Union filed its Notice of Appeal on January 11, 1991 from the December 13, 1990, and previous orders. Various parties have filed cross-appeals.

The parties have raised a number of issues that require further discussion of the facts. This amplification will be included in the consideration of the separate issues.

## I.

## JURISDICTION

The McCann defendants and the class plaintiffs have moved to dismiss National Union's appeal of January 11, 1991, as untimely as to all orders other than that of December 13, 1990. They argue that the district court's order of April 24, 1990, was final and appealable, therefore this appeal as to that order and the earlier rulings is untimely.

National Union contends that the district court's order of December 13, 1990 quantifying the class attorneys' fees under 42 U.S.C. § 1988 was the final order and that the Notice of Appeal was therefore filed within the thirty day period specified by Federal Rule of Appellate Procedure 4(a).

As the district court's severance order implicitly acknowledged, the litigation in reality consists of two separate, but interrelated, claims. The class action sought damages and attorneys' fees against the McCann defendants and others for civil rights violations. National Union was not named as an original defendant in that suit.

The second claim is that brought by the McCann defendants against National Union seeking indemnification for damages and attorneys' fees that might be due the class plaintiffs, as well as attorneys' fees expended by the McCann defendants in defending the class action and, finally, attorneys' fees expended by the McCann defendants in connection with the suit brought against National Union. The latter two claims for attorneys' fees—that is, those for the McCann defendants' lawyers, are

not challenged in the briefs and are not involved in the jurisdictional issue.

Although many orders were entered in this prolonged litigation, the timeliness issue requires that we focus only on a few.

1. The third-party action was based on the McCann defendants' contentions that National Union's general liability policy issued to the campaign committees applied to the civil rights claims made by the class plaintiffs and the carrier had wrongfully denied coverage. The district court agreed and in its order of June 1, 1989, granted the McCann defendants' motions for summary judgment against the insurance company "as to the duty to defend and indemnify [class] plaintiffs' claims regarding civil rights violations and intentional acts."

National Union did not at that point undertake the defense of the McCann defendants in the class suit. Shortly after the court entered its order, however, the McCann defendants negotiated settlements with the class plaintiffs. The agreements left open the amount of counsel fees to which the class would be entitled as a prevailing party under 42 U.S.C. § 1988.

2. The next relevant order was that of April 24, 1990, in which the district court found the settlements with the class plaintiffs by the McCann defendants to be in good faith and directed indemnification by National Union. Included in that order was a requirement that National Union indemnify the McCann defendants for attorneys' fees awarded in favor of the class plaintiffs. At the time of that order, the class plaintiffs had not yet submitted a petition for fees.

3. It was not until its order of December 13, 1990, that the court fixed the attorneys' fees and expenses due the class plaintiffs and directed the McCann defendants to pay two-thirds of that amount.

The McCann defendants argue that the order of April 24, 1990, was final or, in the alternative, that the litigation as a whole became final for purposes of appealability when the district court entered an order in July of 1990 disposing of all remaining

claims in the third party action.[2] In their view, the pending matter of attorneys' fees due the class was a collateral matter that did not affect the finality of the April 24, 1990 order.

Resolution of this issue requires a discussion of *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). There, the Supreme Court adopted a "brightline" rule for attorneys' fees orders as they might affect finality for appeal purposes. The Court decided that "an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final." *Id.* at 202, 108 S.Ct. at 1721–22.

The Court's opinion must be read closely. It does not, as the McCann defendants would seemingly have us read it, say that *all* claims for attorneys' fees are collateral matters that do not affect the finality of orders on the merits of a dispute. The Court, in categorizing attorneys' fees, consistently used such qualifications as: "fees for the litigation," *id.* at 199, 108 S.Ct. at 1720, "fees for the litigation at hand," *id.* at 201, 108 S.Ct. at 1721, "fees for the litigation in question," *id.* at 202, 108 S.Ct. at 1721, "fees attributable to the case," *id.* at 203, 108 S.Ct. at 1722. *See Justine Realty Co. v. American Nat'l Can Co.*, 945 F.2d 1044, 1047–48 (8th Cir.1991).

These limitations underscore the facts and posture of the case before the Court in *Budinich*. The plaintiff had brought that action to recover employment compensation and, as the prevailing party, sought attorney's fees that were authorized by a state statute. The Supreme Court concluded that in the interest of clarifying what constituted a final order for purposes of appealability, the effect of an unresolved issue of attorney's fees for that litigation should not turn upon the characterization of those fees as "costs" or as part of the "merits."

In reaching this conclusion the Court resolved an intercircuit conflict between Courts of Appeals. *Compare Holmes v. J.*

*Ray McDermott & Co.*, 682 F.2d 1143, 1146–48 (5th Cir.1982) (Court concluded that attorney fees in a maritime action were an integral part of the merits) *with International Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers' Local Union 75 v. Madison Indus.*, 733 F.2d 656, 658–59 (9th Cir.1984) (attorney's fees requests are always collateral to the main action). In both *Holmes* and *Madison Industries* the prevailing party claimed counsel fees. The Courts of Appeals differed on whether an order fixing the amount of the fees was the final action of the district court for purposes of appeal under 28 U.S.C. § 1291.

The Supreme Court settled the conflict in *Budinich* stating that "a claim for attorney's fees is not part of the merits of the action *to which the fees pertain.* Such an award does not remedy the injury giving rise to the action...." *Budinich*, 486 U.S. at 200, 108 S.Ct. at 1721 (emphasis added).

In *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175, 109 S.Ct. 987, 991, 103 L.Ed.2d 146 (1989), the Court concluded that pre-judgment interest was part of the "merits" of a case. In addition, the Court commented that it had said in *Budinich* that attorney's fees were "not part of the merits of the *underlying* action because such fees are not part of the compensation for the plaintiff's injury." *Id.* (emphasis added). Essentially, *Budinich* concluded that an award of counsel fees to the prevailing party is not a part of the judgment, but rather is due because of the judgment. *Cf. Buchanan v. Stanships, Inc.*, 485 U.S. 265, 267–68, 108 S.Ct. 1130, 1131–32, 99 L.Ed.2d 289 (1988) (discussing *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982)).

It is critical to recognize that the relevant claim for fees here was not that made by the McCann defendants pursuant to state statute to recover for representation in this case against National Union. That clearly is a *Budinich* claim. Here, the fees were incurred by the class plaintiffs in

---

**2.** These included the claims against Johnson Excess, Ltd. and J.R. Insurance Brokerage.

bringing their claims for civil rights violations.

The monetary claim presented by the McCann defendants in this case against National Union consisted of two elements—the damages that they were required to pay the class plaintiffs and the attorneys' fees that the McCann defendants were required to pay the class plaintiffs. The McCann defendants total obligation to the class plaintiffs, and hence their total claim for damages against National Union, was not determined until the amount of the class action counsel fees had been set. The class action attorneys' fees were but one element of the total sum that National Union owed to the McCann defendants, similar to pre-judgment interest or any other comparable element of recompense.

Similarly, the McCann defendants' agreement to pay the class plaintiffs' court costs was another element of the damages that could be asserted against National Union. That is so even though, generally, a judgment is final despite the fact that court costs incurred in the case have not yet been fixed. *Buchanan v. Stanships, Inc.*, 485 U.S. 265, 268–69, 108 S.Ct. 1130, 1131–32, 99 L.Ed.2d 289 (1988); *Fincher v. Keller Indus.*, 905 F.2d 691, 693 (3d Cir.1990).

The McCann defendants rely on *Frangos v. Doering Equip. Corp.*, 860 F.2d 70 (3d Cir.1988), but that case is distinguishable on its facts. There, the plaintiff filed a petition for attorneys' fees after the jury had returned a verdict in its favor on an indemnity claim. The claim for fees was based on the plaintiff's expenditure of sums for its own attorney in previous litigation. The amount of fees to which the plaintiff was entitled had not been reduced to judgment and, therefore, we held that the fee claim was not yet appealable. The Court also rejected an argument that because the fees had not yet been quantified all aspects of the case were thus unappealable. *Id.* at 72.

Although not discussed in *Frangos*, it might well be that in failing to provide proof to the jury of the attorneys' fees incurred in the previous action, the plaintiff waived that claim. It is sufficient for present purposes, however, to point out that the McCann defendants' claim here is not for their own attorneys' fees, but for those of the class counsel. *Cf.* Beckwith Mach. Co. v. Travelers Indem. Co., *815 F.2d 286, 291 (3d Cir.1987). The McCann defendants sought recovery of the class plaintiffs' fees as an element of damages against National Union and not as a prevailing party in the litigation.*

## II.

### INSURANCE POLICY COVERAGE

National Union issued a "general comprehensive liability policy with a 'broad form endorsement'" naming as insureds the Democratic Dinner Committee of 1985, Professionals for McCann, and the Democratic Dinner Committee, Fall 1984. National Union impliedly concedes that the McCann defendants were within the class of insureds named in the policy.

Both the McCann defendants and National Union moved for summary judgment on the issue of coverage. The district court ruled in favor of the McCann defendants and in a comprehensive opinion reviewed the facts underlying the coverage issue.

The complaint filed by the class plaintiffs alleged in general that McCann's opponent in the runoff election for mayor enjoyed broad-based support in the "Black and Hispanic" neighborhoods. As part of its strategy, the McCann campaign targeted those areas for special attention. Letters were sent to Black and Hispanic residents of public housing projects stating that unless their names appeared on leases, they would not be permitted to vote and would be prosecuted if they attempted to do so.

As chairman of the Democratic party, McCann was able to appoint new members to the District Boards that conduct the voting at each polling place. District Board members were instructed by members of the McCann campaign, contrary to conventional procedure, to prevent individuals from voting unless they produced a current lease for public housing or a utility bill in the voter's name.

McCann was also permitted to select challengers to serve at polling stations. These individuals were permitted to question persons suspected of lacking a legal right to vote. McCann allegedly used this opportunity to appoint off-duty policemen to intimidate and harass eligible voters in Black and Hispanic neighborhoods. An (inaccurate) challenge registry was prepared listing five to six thousand names of voters whose sample ballots had been returned as undeliverable. Additionally, coded lists based on race were prepared for challenging voters and inadequate bilingual assistance was provided at the polls.

These activities were alleged to have violated, *inter alia*, 42 U.S.C. §§ 1971, 1973, 1981, 1983, 1985 & 1986. Based on the allegations in the complaint, the McCann defendants asserted that the National Union policy provided coverage.

The carrier's general agent, Johnson Excess, Ltd., wrote the policy which National Union reviewed without comment. Edward Johnson, in an affidavit, stated that he understood the insured organizations would be engaged in attempting to raise money and garner votes. Johnson Excess apparently was limited to the selection of a form policy and the one ultimately used was that for a commercial organization. The risk was viewed as comparable to that of a sales and service organization for the purpose of setting a premium.

The district judge properly looked to New Jersey law to determine the coverage issues and observed that the state supreme court had held that ambiguities in policies were to be interpreted in accordance with the reasonable expectations of the parties.

The district court referred to Johnson's deposition testimony where he recounted a conversation with McCann's broker who said that the committees were going to be working to re-elect McCann and do the normal things that election committees do. The discussion did not include "any particular broad description of the activities that would be involved." *Vargas,* 714 F.Supp. at 723.

Conceding that no explicit reference to civil rights actions was in the policy endorsement, the court pointed out that "this is a standard commercial insurance policy which has been pressed into service to cover the unique risks involved in a political campaign." *Id.* Because the endorsement extended coverage to a commercial establishment for various intentional torts such as false arrests, detention, and malicious prosecution, the court concluded that a political organization would be covered for such similar activities as civil rights violations. *Id.* at 724.

*Sua sponte* the court addressed the issue of whether "permitting coverage of acts committed with actual malice or indemnifying punitive damages offends public policy." *Id.* at 725. Citing *City of Newark v. Hartford Accident & Indem. Co.,* 134 N.J.Super. 537, 342 A.2d 513 (App.Div. 1975), the court concluded that New Jersey might hold coverage for a punitive damage award violated public policy. Nevertheless, because there had been "no factual conclusions regarding what wrongs the [McCann defendants] committed, if any, it [was] premature to decide at [that] point whether *Newark* [limited] coverage in any way." *Id.* at 725–26.

The court suggested that in the circumstances the best course would be to continue to have the McCann defendants represented by their current lawyers, and for National Union's attorneys to protect its interests under the policy. "After the trial is concluded, the remaining questions regarding coverage can be resolved.... If punitive damages are not ultimately awarded at least some of these issues will disappear." *Id.* at 726.

On appeal, National Union contends that the evidence of the parties' expectations was in dispute and that public policy prohibits indemnification for the McCann defendants' intentional acts which were criminal or otherwise wrongful. The McCann defendants argue that the relevant "reasonable expectations" as to coverage are those of the insured and that the policy permissibly covered intentional acts.

The New Jersey Supreme Court has not always been consistent in determining whose "expectations" are relevant in inter-

preting insurance policies. Thus, in *Werner Indus. v. First State Ins. Co.*, 112 N.J. 30, 548 A.2d 188, 190–91 (1988), the opinion referred at one point to the "objectively reasonable expectations of the parties," but later in the same paragraph referred to the "reasonable expectations of the insured." Obviously, the two are not the same. We are convinced, however, that the state supreme court is committed to a standard that looks to the reasonable expectations of the insured.

In *Sparks v. St. Paul Ins. Co.*, 100 N.J. 325, 495 A.2d 406, 414 (1985), the Court explained that by traditional standards of contract law the consent of both parties based on informed understanding of its terms is rarely present in insurance policies. Hence, New Jersey enforces unambiguous insurance contracts in "accordance with the reasonable expectations of the insured." *Id.* 495 A.2d at 412. Similarly, the "recognition that insurance policies are not readily understood has impelled courts to resolve ambiguities in such contracts against the insurance companies." *Id.* 495 A.2d at 412; *see also Zuckerman v. National Union Fire Ins. Co.*, 100 N.J. 304, 495 A.2d 395, 404 (1985) (policy "interpreted in a manner that recognizes the reasonable expectations of the insured"); *Meier v. New Jersey Life Ins. Co.*, 101 N.J. 597, 503 A.2d 862, 869 (1986) (objectively reasonable expectations of the insured used to arrive at interpretation of policy coverage).

■ We conclude, therefore, that under New Jersey law, the reasonable expectations of the insured and not those of the insurance company are used to construe a policy. Consequently, we must reject National Union's contention that the district court erred in failing to consider the evidence establishing the carrier's understanding of the policy terms. The court properly confined its review to the facts establishing the reasonable expectations of the insureds.

■ That is not to say that National Union lost its right to the benefit of inferences from the facts in the record. To the extent that evidence is material and relevant, the district court is required to draw reasonable inferences in favor of the non-moving party. The evidence of what National Union's agents and underwriters thought about the coverage, however, does not relate to, nor does it create any inferences here about the expectations of the insureds. To the contrary, the evidence presented by National Union and the inferences it draws relate solely to its own intent and expectations.

■ We come then to the question of whether the policy covered civil rights violations. As the district court pointed out, using a form policy covering general business activities created ambiguities when the provisions were applied to the political campaign committees. The policy spoke of being comprehensive, and used terms applicable to commercial coverage for such torts as bodily injury, advertising injury, and false arrest. As applied to political campaigning, these provisions, although not completely without relevance, failed to address the principal activity of the insureds.

The policy provided indemnity for an "advertising injury" described as arising out of "libel, slander, defamation, violation of right of privacy, unfair competition, or infringement of copyright title or slogan." Also included in the policy was protection from claims of "personal injury" including "false arrest, detention, imprisonment, or malicious prosecution, wrongful entry or eviction or other invasion of the right of private occupancy" or "a publication or utterance ... in violation of an individual's right of privacy." The extension of coverage for these volitional acts associated with a business concern, is evidence that the policy was not confined to negligent or inadvertent actions. In the context of a political campaign, civil rights complaints would be analogous and within the reasonable expectations of the insured.

Our reading of New Jersey Supreme Court opinions leads us to believe that under state law, National Union did owe coverage for the claims alleging violations of civil rights. The totality of the evidence here, including that the McCann defendants desired and expected protection for campaign conduct, and that the carrier was

generally aware of the committees' projected activities, was sufficient to establish coverage. As the district court found, it was not unforeseeable that the campaign organizations would be targets of litigation including civil rights actions.

National Union argues further, however, that to indemnify a person against the intended results of intentionally wrongful or criminal conduct violates public policy. It relies particularly on *City of Newark v. Hartford Accident & Indem. Co.*, 134 N.J.Super. 537, 342 A.2d 513 (App.Div. 1975), and *Ambassador Ins. Co. v. Montes*, 76 N.J. 477, 388 A.2d 603, 606 (1978). In *Ambassador*, the Supreme Court of New Jersey "accepted the general principle that an insurer may not contract to indemnify an insured against the civil consequences of his own wilful criminal act." *Id.*

The *City of Newark* case was a declaratory judgment action to determine whether coverage was extended to individual police officers in a civil rights action alleging unlawful arrest, assault and battery, and malicious prosecution. The policy expressly included indemnification for offenses committed in the conduct of the City's "business" including false arrest, assaults committed in connection with that arrest, and malicious prosecution. The policy excluded coverage for personal injuries arising out of "the wilful violation of a penal statute."

The court concluded that public policy would prohibit indemnification for an act that "constitutes a crime or involves actual malice or other outrageous conduct," *City of Newark*, 342 A.2d at 518, but that indemnification would be permitted "where the injury suffered is the unintended or only the probable result of the intentional act." *Id.* A compensatory award could be covered, but punitive damages could not. *Id.*

The district court here discussed the issues posed by *City of Newark* and concluded that it would be premature to decide whether that case limited coverage in any way. National Union, however, contends that the court should have looked to the class plaintiffs' complaint and from those

allegations determined that plaintiffs would rely on the McCann defendants' criminal conduct and intentionally wrongful actions. Consequently, the carrier suggests, to provide coverage to the McCann defendants would violate public policy.

National Union's argument, however, fails to acknowledge that the district court was well aware that the class plaintiffs' allegations ultimately proved would have an effect on coverage. Rather than resolve the question of the duty to defend based on the plaintiffs' complaint, as is the normal practice, the district court said "[i]n this situation the best course may be to permit the [McCann defendants] to continue to be represented by their current counsel and to permit the insurer's attorney to protect its interests under the policy." *Vargas*, 714 F.Supp. at 726.

Thus, the court recognized that in the unique circumstances present here, the ultimate decision on whether the policy created the duty to defend as well as to indemnify might be determined at the class trial. For example, "[i]f punitive damages are not ultimately awarded at least some [coverage] issues [would] disappear." *Id.* at 726. If other questions remained, they could be resolved after the class trial.

After the class plaintiffs and the McCann defendants settled their differences—without any payment of punitive damages—National Union did not request a plenary hearing to establish whether the acts committed by the McCann defendants were, in fact, criminal, committed with actual malice, or outside the scope of employment. Despite the district court's pointed comment that these troublesome coverage issues could be resolved at a later date, National Union failed to ask for such a determination in the trial court and has thereby waived its objection.

■ In sum, the district court concluded that the policy covered civil rights violations, but left to another day the determination of whether coverage of the McCann defendants' actions, whatever they might be, violated public policy. It was National Union's burden to establish such an exclusion, but it did not request a hearing at

which the requisite findings of fact could be made. Accordingly, on this record we conclude that the district court's ruling was not erroneous to the extent that it held that National Union owed indemnification as well as the duty to defend. In the absence of factual findings establishing criminal actions by the McCann defendants, we have no basis to review National Union's contention that public policy prohibits coverage for such conduct.

## III.

### THE SETTLEMENTS

National Union also contends that the class plaintiffs could not have prevailed against the McCann defendants and, for that reason, the settlements entered into with the class plaintiffs were unreasonable and excessive.

The class plaintiffs and the McCann defendants negotiated settlements under the auspices of a magistrate judge. The proceedings spanned a period of several months and were quite intense. The attorneys for National Union attended some, but not all of the meetings. The district judge approved the settlements with the class and the terms were embodied in a consent judgment.

At a second hearing, the district court found that the settlements were negotiated in good faith, were fair, reasonable and enforceable against National Union. The court concluded that the McCann defendants were potentially liable under section 1983 because of their participation with state officials—District Board members and the Board of Elections.

In considering the amount of the settlements, the court observed that there were an estimated 1,000 class members, and determined that $590 per individual was "eminently reasonable" for the injury suffered. "It was a prudent settlement." The court also held that the $100 deductible stated in the policy would apply to each of the approximately 1,000 claims.

On appeal, National Union challenges the settlements and the class plaintiffs contest the application of the $100 deductible for each claimant.

■ The reasonableness of the settlements and whether National Union would be bound by them are matters of state law. In *Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163, 172–73 (1982), the New Jersey Supreme Court held that an insurer that wrongfully refuses to defend is liable only for a reasonable settlement entered into in good faith by its insured. The insured has the burden of producing evidence showing that the settlement was prima facie reasonable, but the insurance carrier has the ultimate burden of demonstrating that the settlement was neither reasonable nor reached in good faith. *See Id.; Battista v. Western World Ins. Co.*, 227 N.J.Super. 135, 545 A.2d 841, 848 (Law Div.1988). The fact that as part of the settlement the injured party agrees to seek relief only from the insurer does not vitiate the arrangement. *See Griggs*, 443 A.2d at 174–75.

National Union has a particularly difficult task here because the district judge who was intimately familiar with this lengthy litigation specifically found that the amount was fair and reasonable. He did so only after a hearing on the matter in which National Union and the other parties participated.

National Union is on weak ground also in contending that because the class plaintiffs could not have prevailed against the McCann defendants the settlements were unreasonable. The carrier argues that the district court did not properly review the allegations in the class plaintiffs' complaint. That pleading, however, does not furnish the sole determinative. In deciding whether a settlement is prudent and reasonable, a court must consider the risk to the settling parties. It is the extent of the defendants' exposure to liability and not mere allegations in the plaintiffs' complaint that govern the appraisal of reasonableness.

Here the district court had already denied a motion for summary judgment in which the McCann defendants asserted that they could not be found liable. In addition, the district judge, in his opinion

approving the reasonableness of the settlement, painstakingly reviewed the factors bearing on the possibility of liability and amount of damages. These detailed findings contrast starkly with the pro forma approval by the trial judge in *Battista* which was found wanting.

■ The several lengthy opinions filed by the district judge in this case thoroughly explore the McCann defendants' potential liability and the possibility of recovery substantially in excess of the settlement amount. We find no error in the district court's appraisal of the pertinent factors and, accordingly, reject National Union's challenge to the reasonableness of the settlements.

■ We must also deny the class plaintiffs' assertion that the district court erred in applying the $100 deductible amount to each of the claims presented by individual class members. The policy contained an endorsement that reads:

"If the deductible is on a 'per claim' basis, the deductible amount applies under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all damages because of bodily injury sustained by one person, or to all property damage sustained by one person or organization, as the result of any one occurrence."

The district judge properly construed the language in the policy as requiring the deductible amount be applicable to each individual class member's claim. *See Burlington County Abstract Co. v. QMA Assocs.*, 167 N.J.Super. 398, 400 A.2d 1211, 1216 (App.Div.), *cert. denied*, 81 N.J. 280, 405 A.2d 824 (1979).

## IV.

### ATTORNEYS' FEES ENHANCEMENT

National Union, the McCann defendants, and the Election Board defendants join in asserting that the district court erred in granting a 25% enhancement to the attorney's fees awarded to the class plaintiffs. The additional amount was awarded for the risk counsel assumed in accepting representation of the class in this case. No other objection to the computation of counsel fees has been raised in this appeal.

Eligibility for a contingency enhancement was discussed by the Supreme Court in *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), and has been analyzed by this court on several occasions since. *Delaware Valley* was a four-four-one decision in which Justice O'Connor cast the deciding vote in denying an enhancement. Noting the awkwardness in attributing precedential status to the opinion of one Supreme Court Justice to which no other Justice adhered, we have nevertheless derived some significant factors from Justice O'Connor's opinion:

1. Compensation for a contingency must be based on market treatment of contingent fee cases as a class, rather than the "riskiness" of a specific case.

2. The contingency enhancement must be necessary to attract competent counsel.

*Blum v. Witco Chem. Corp.*, 888 F.2d 975, 981 (3d Cir.1989); *Student Public Interest Research Group v. AT & T Bell Lab.*, 842 F.2d 1436, 1451 (3d Cir.1988). It is the latter limitation that is determinative in this case and we will confine our discussion to it.

Justice White in his plurality opinion in *Delaware Valley* wrote that "[b]efore adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." 483 U.S. at 731, 107 S.Ct. at 3089, Justice O'Connor in concurring explicitly adopted the same position: "I agree with the plurality that no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.' *Ante*, at 731 [107 S.Ct. at 3089]." *Id.* 107 S.Ct. at 3091, 483 U.S. at 733 (O'Connor, J., concurring).

In *Rode v. Dellarciprete*, 892 F.2d 1177, 1184 (3d Cir.1990), we summarized the requirements for contingency enhancements, cautioning that they should be granted only in rare cases. The fee applicants must establish:

"(1) how the market treats contingency fee cases as a class differently from hourly fee cases;

(2) the degree to which the relevant market compensates for contingency;

(3) that the amount determined by the market to compensate for contingency is not more than would be necessary to attract competent counsel both in the relevant market and in its case; and

(4) that without an adjustment for risk the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market." *Id.* (citations omitted).

■■■■■ Thus, it may be seen that the amount of a contingency enhancement must be determined by looking at the market as a whole, rather than measuring the additional compensation by the risk posed in the specific case. But, whether any enhancement at all is permissible must first be established by the applicant. To meet that burden the applicant must show that the prevailing party would have faced substantial difficulties in finding counsel in the absence of an enhancement. In *Kelly v. Matlack, Inc.*, 903 F.2d 978, 987 (3d Cir. 1990), we characterized this showing as a "mandatory prerequisite to an enhancement."

The class plaintiffs here failed to meet that burden. The district court found that "[d]efendants in this case have shown that plaintiffs had no trouble whatsoever in attracting competent counsel. In fact, highly competent counsel from the organizations sponsoring this case sought out the class plaintiffs and persuaded them to pursue this lawsuit.... [I]n this case as in many such cases, the prospect of a contingency multiplier would not have been necessary to obtain legal representation." 750 F.Supp. at 685–86.

The district court, however, reasoned that under the prevailing case law, the ability or inability to obtain counsel was to be determined not on the facts of the individual case, but rather by reference to the class of contingent cases as a whole. The court thus erroneously applied a class-based standard in making the preliminary determination of whether any contingency allowance at all was warranted. As noted earlier, the applicant must establish difficulty or inability to obtain counsel in the case at issue before the focus shifts to a class-based determination of how much the enhancement should be.

We note that allowing enhancement when counsel is reluctant to take a case because the defendant's liability is questionable as a matter of law, but denying an enhancement when counsel is willing to accept a case where liability is clear creates anomalous results. In effect, the more flagrant the defendant's conduct, the less difficulty the plaintiff will face in securing counsel and hence it is unlikely that an enhancement will be assessed against the defendant. Conversely, the stronger the defense is as a matter of law, the greater the likelihood that the penalty of enhancement will be imposed on the defendant. Thus, the factors that may justify an adjustment for contingency between counsel and client are sometimes inequitable when the fee is levied against the adversary. *See Prandini v. National Tea Co.*, 557 F.2d 1015, 1020 (3d Cir.1977). On the other hand, if the defendant's conduct is clearly culpable, but the plaintiff's risk of losing is based on difficulty in uncovering concealed or almost inaccessible evidence, enhancement would be justified.

■■■■ In this case, we need not comment on what applicants must show in order to establish that they would have faced substantial difficulties in obtaining counsel. Here, the finding that counsel sought out the plaintiffs to pursue this litigation conclusively establishes that they had no difficulty in securing representation. The district court, therefore, erred in awarding an enhancement and the order awarding counsel fees will be reversed to that extent.

The Election Board defendants also contend that the district court erred in allocating the responsibility for payment of the class attorneys' fees, two-thirds to the McCann defendants and one-third to the state officials. That division of responsibility was arrived at by the district court in the exercise of its discretion in appraising the respective roles of all the defendants and their participation in this complex litigation. We find no abuse of discretion in that determination.

The judgment of the district court will be affirmed, except as to the enhancement factor. As to that matter, the case will be remanded to the district court for deletion of the enhancement and adjustment of the amount of the class attorneys' fees accordingly.