854 A.2d 948 (2004)
371 N.J.Super. 580
Margo KRAMER, Individually and as Class Representative Plaintiff; Toni L. Bouziotis, Individually, and as Class Representative Plaintiff; and Lloyd A. Merriman, Jr., Individually, and as Class Representative Plaintiff, Plaintiffs,
v.
CIBA-GEIGY CORP., Novartis Corp., Ciba Specialty Chemicals Corp., Defendants-Appellants/Cross-Respondents, and
James A. McPherson, and William P. Bobsein, Defendants-Respondents/Cross-Appellants, and
United Water Management & Services, Inc., a/k/a United Water Toms River, Individually and as successor to Toms River Water Co., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 2004.
Decided August 9, 2004.
*950 David W. Field, Roseland, argued the cause for appellants/ cross-respondents (Lowenstein, Sandler PC, attorneys; Mr. Field, on the brief).
Henry F. Furst argued the cause for respondent/ cross-appellant William P. Bobsein.
Ben A. Montenegro, Brick Town, argued the cause for respondent/ cross-appellant James A. McPherson (Wilbert, Montenegro & Thompson, attorneys; Michael E. Wilbert, on the brief).
Before Judges STERN, A.A. RODRIGUEZ and LEFELT.
The opinion of the court was delivered by
STERN, P.J.A.D.
The Ciba-Geigy corporate defendants (collectively "CIBA") appeal from an order of October 29, 2002 which declared that the individual defendants, William P. Bobsein and James A. McPherson, "are deemed fully indemnified from any judgment or settlement in the pending suits by the indemnification provision" of their respective consulting agreements with CIBA and that the individual defendants "are entitled to ... conflict-free counsel in accordance with the Rules of Professional Conduct to represent them" in the remaining matter (Janes v. CIBA-GEIGY).[1] The order further granted the individual co-defendants'"cross-motion for summary judgment on the breach of contractual indemnification (count one) and declaratory judgment (count three)" claims, and denied CIBA's motion for summary judgment. As a result, Bobsein's counsel was awarded $212,703.33 and McPherson's counsel was awarded $198,023.66 at CIBA's expense.
CIBA does not dispute the individual defendants' right to a defense and indemnification under their respective agreements with CIBA, but asserts that CIBA had the contractual right to select counsel and that the trial judge erred in granting Bobsein and McPherson summary judgment because she failed to apply New York law as governing the agreement, found that a conflict of interest existed, resolved factual disputes without an evidentiary hearing, and improperly relied upon the recommendation of a mediator in making the fee award.
Bobsein and McPherson cross-appeal from the amount of counsel fees awarded. They contend that the trial court erroneously penalized them for retaining separate attorneys, thereby requiring duplicative work by counsel, and further penalized Bobsein because he hired a solo practitioner who had to research the legal issues at his billable rate.
We hold that New Jersey law applies with respect to whether there would be a conflict of interest by counsel, thereby affecting the agreements' enforceability in New Jersey proceedings, and that New Jersey law controls on the question of whether counsel selected by CIBA could represent the individual defendants in the courts of this state. We also hold that the representation by counsel selected by CIBA would pose a conflict of interest and that that the individual defendants were justified in retaining their own counsel. Finally, with respect to the cross-appeal, we hold that the individual defendants did not have to choose the same counsel, each is entitled to recover for his counsel fees, and Bobsein should not have been penalized for hiring a solo practitioner.

*951 I.
Bobsein and McPherson seek counsel fees for defending actions commenced against them for conduct occurring while they were employees of CIBA. The underlying claims by plaintiffs are for personal injuries and medical monitoring stemming from unauthorized disposal of toxic waste over a lengthy period of time at CIBA's plant in Toms River, New Jersey. On October 24, 1984, CIBA, Bobsein, McPherson and two other CIBA employees, Dr. David Ellis and Robert Fesen, were indicted for their illegal conduct. See State v. Ciba-Geigy, 222 N.J.Super. 343, 346, 536 A.2d 1299 (App.Div.), certif. granted, 111 N.J. 574, 575, 546 A.2d 502 (1988). A second indictment was returned after the first one was dismissed and it did not include Ellis or Fesen. On February 28, 1992, Bobsein and McPherson entered guilty pleas to a single fourth degree crime. CIBA also entered a guilty plea and was ordered to pay a criminal penalty of $3,500,000.[2]
On May 18, 2000, three individuals who sought to serve as class representatives for other Toms River residents commenced the present matter. Plaintiffs claimed no actual physical injury but sought to establish a medical monitoring fund to guard against future injury from exposure to chemical contamination emanating from CIBA's Toms River facility. The complaint asserted common law counts against CIBA related corporate entities, Bobsein, McPherson, Ellis and Fesen. On May 26, 2000, the first amended complaint was filed and asserted the same claims but voluntarily dismissed two of the four individuals, leaving only Bobsein and McPherson.
In response to CIBA's motion to dismiss, plaintiffs filed a second amended complaint on September 6, 2000, to (1) replace the initial plaintiffs with the present plaintiffs as representatives of the class, (2) join defendant United Water Management & Services, Inc. and (3) assert a claim for "concert of action/concerted action" against all defendants.
In their answers to the second amended complaint, filed on November 14, 2000, Bobsein and McPherson raised "cross-claims" against the "co-defendants" for common law and contractual indemnification, contribution and declaratory judgment. McPherson's cross-claims were expressly limited to the CIBA defendants. Both Bobsein and McPherson also sought a declaratory judgment "that the indemnification agreement is valid and enforceable," and that CIBA had to provide "conflict free counsel." Thereafter, on December 4, 2000, CIBA filed an answer which did not assert any cross-claims.
Other personal injury actions, a wrongful death case, and a class action for property damages, were also filed against CIBA and defendants. By order of the Supreme Court dated January 12, 2001, this case was transferred to Middlesex County to Judge Marina Corodemus for case management with approximately 600 other related actions.
By court order dated March 2, 2001 and with the agreement of counsel, a mediator was appointed to assist in resolving the claims. Bobsein and McPherson assert that CIBA agreed to submit the cross-claims regarding their defense costs and indemnification. CIBA claims it did not agree to that aspect of the mediation, although it willingly participated in the mediation on other issues. Judge Corodemus noted in her opinion that "[t]he issue of *952 counsel, counsel fees and indemnification as between co-defendants, Bobsein and McPherson was one such issue agreed to by all co-defendants for mediation...." In any event, the parties were unable to come to an agreement on the subject, and the mediator issued a "recommendation on the CIBA defendants' obligation to indemnify and pay certain defense costs" in favor of Bobsein and McPherson. The mediator concluded that "Ciba-Geigy Corporation did not fulfill its obligation ... to provide conflict-free counsel" and "must pay the legal fees" of their attorneys, Henry Furst and Michael Wilbert, for services rendered on behalf of Bobsein and McPherson.
CIBA moved on April 4, 2002 to "vacat[e]" the mediator's recommendation and sought summary judgment on Bobsein's and McPherson's contractual cross-claims. On May 1, 2002, Bobsein and McPherson cross-moved for summary judgment. While those motions were pending, the medical monitoring claims in the underlying case, the Kramer case, and all but one of the other cases (Janes v. CIBA-GEIGY) settled without any financial or other participation by Bobsein and McPherson. Plaintiffs' claims in Kramer were dismissed on July 22, 2002. Thus, as of July 22, 2002, the only remaining case was the Janes matter.[3] As already noted, without conducting a plenary or evidentiary hearing, the judge denied CIBA's motion for summary judgment and granted Bobsein and McPherson's cross-motion for summary judgment on the cross-claims. She awarded them $212,703.33 and $198,023.66, respectively, in counsel fees and costs.
No party contends that, notwithstanding the pendency of Janes at least to the corporate defendants, the appeal is interlocutory. We find no indication of consolidation or any other reason not to treat the matter as an appeal from a final judgment.

II.
Bobsein and McPherson are both former employees of CIBA, who during their employment had management positions in the Environmental Technology Department at CIBA's Toms River Plant. When their employment with CIBA ended in the early 1990's, each entered into a consulting agreement with CIBA; Bobsein on December 31, 1991, and McPherson on February 12, 1992.[4] Each consulting agreement contained identical indemnification provisions and choice of law provisions, which read as follows:
11. Except for occurrences of your willful misconduct, CIBA-GEIGY will defend and indemnify you in connection with any claims asserted or litigation commenced after the date hereof and based on your prior employment by CIBA-GEIGY or this consultancy, provided that you give prompt notice to CIBA-GEIGY of such claim or litigation. In such instance, CIBA-GEIGY shall have the right to assume the defense thereof with counsel of its choice. You agree to cooperate with CIBA-GEIGY in the defense of any asserted liability and, in any event, shall have the right to participate at your own expense in the defense of the asserted liability.
....
16. This Agreement shall be construed and interpreted in accordance with the laws of the State of New York applicable *953 to contracts to be performed entirely within that State. (Emphasis added.)
Both agreements also contained a provision stating that the
Agreement constitutes the entire agreement ... [and] may be changed only by a written agreement signed by us ... [and n]o oral agreement or conversation with any officer, agent or employee of [CIBA], either before or after the execution of this Agreement, shall affect, alter or modify our obligations hereunder.
There is no dispute that the agreement covered claims based on prior conduct, and as already noted, in the criminal proceeding involving their employment at CIBA, both Bobsein and McPherson pled guilty to a fourth degree criminal offense. Both Bobsein and McPherson certified that, in agreeing to plead guilty, they were assured by CIBA that they would be indemnified and provided independent, conflict free counsel in any future litigation arising from their employment with CIBA.
On June 2, 2000, after the first amended complaint was filed in the Kramer matter, James Stewart, a partner at the law firm of Lowenstein Sandler, wrote to Bobsein and McPherson separately advising them that his firm was representing CIBA in connection with the litigation and that CIBA had requested that the firm also represent them at CIBA's expense. The letter further provided that such joint representation "is permissible where the facts and circumstances of the case do not indicate the existence of a conflict between the interests of an individual employee co-defendant and CIBA" and "that [b]ased on [Lowenstein's] present knowledge of the underlying facts of the ... claim, we do not believe any such conflict exists between CIBA and you and do not anticipate that any will arise as this matter progresses." However, Stewart requested that Bobsein and McPherson acknowledge and confirm in writing that "no conflict" existed between the interests of Bobsein and McPherson and those of CIBA "which, if disclosed, could preclude" the joint representation. The letter continued "that in the unlikely event such a conflict should develop during the course of [the joint] representation" or if Lowenstein determined that continued representation was "not appropriate," Lowenstein would "resign... representation" of Bobsein and McPherson and "continue to represent CIBA" without their objections. They were further asked to acknowledge and confirm that they had "been given the opportunity to review this letter with separate counsel of [their] own choosing" and did not rely on advice provided by Lowenstein "in agreeing to the terms of [the] letter."
Bobsein consulted Henry Furst, the attorney who had represented him at CIBA's expense in past matters involving his employment at CIBA, to review the offer of representation contained in the June 2, 2000, letter. By letter dated July 19, 2000, Bobsein informed Stewart of his decision to reject representation by Lowenstein, but rather use independent counsel, Furst. Bobsein indicated that having Furst, as "independent counsel of [his] choice, from the start" he "would not have to worry about conflicts" and any resulting effects on the quality of his representation.
McPherson also consulted with the attorney who had previously represented him in the prior litigation involving his employment at CIBA, Michael E. Wilbert. Wilbert advised Lowenstein that he "would not agree to waive the conflict of interest issue or to allow Lowenstein to drop [him] and continue to represent the corporation in the event of a conflict." Lowenstein "refused that request," and McPherson also declined to be represented by Lowenstein.
*954 On July 26, 2000, Stewart wrote Bobsein to inform him that CIBA would not reconsider its choice of Lowenstein to represent him because Lowenstein does "not believe there is any meritorious basis for joining [Bobsein] in [the] litigation" and because neither CIBA nor Bobsein "identified ... any realistic threat of a real conflict." Stewart also informed Bobsein that if he "still prefer[ed] separate counsel, [he would] have to pay for [his] own defense costs and bear the risks [him]self."
On October 13, 2000, Douglas Hefferin, CIBA Vice President for Site Remediation, wrote to Bobsein and McPherson regarding their representation and acknowledged CIBA's obligation to indemnify them. He reiterated that CIBA "remain[ed] willing" to pay their defense costs, "but only with counsel of [CIBA's] choice since it will bear all the expense." However, on November 9, 2000, after discussions with them and their "personal attorneys," Hefferin again wrote to Bobsein and McPherson, jointly, and offered to provide a "defense" if they "both" agreed to accept Joseph A. Hayden, Jr. as their counsel. The letter explained that "[o]n the basis of the facts and circumstances known to us regarding your conduct while an employee and/or consultant for [CIBA], you are to be fully indemnified from any adverse judgment or settlement in the pending suits."
Moreover, the letter stated that while CIBA "continue[d] to be of the view that there [was] no conflict" and that Lowenstein could jointly represent the company and them, they were offering the service of Hayden "in recognition of [their] concern that a conflict may arise in the future and your refusal to waive the conflict to permit [Lowenstein] to represent [CIBA] in such an eventuality." The letter further explained that if they objected to Hayden, CIBA would "offer [them] another attorney," but CIBA would not retain their "personal attorneys as defense counsel in the pending suits" as CIBA had the "right to choose counsel and to direct the defense as long as it continues to recognize its duty to indemnify." Finally, the letter acknowledged that Bobsein and McPherson could choose "to be represented and defended by [their] personal attorneys," but that in such circumstances, CIBA would "not pay for such a defense."
Both Bobsein and McPherson rejected CIBA's offer to retain Hayden on the basis of a conflict of interest primarily stemming from Hayden's prior representation of Dr. David Ellis, who was an individual co-defendant in the CIBA criminal matter. See State v. Ciba-Geigy Corp., supra, 222 N.J.Super. at 345, 536 A.2d 1299. After the first indictment was dismissed, see id. at 356, 536 A.2d 1299, Hayden negotiated immunity for Ellis, who then testified against Bobsein and McPherson at the second grand jury which returned an indictment against Bobsein and McPherson. In addition, Hayden's firm represented CIBA as trial counsel in related insurance coverage litigation. See In re Envt'l Ins. Declaratory Judgment Actions, 149 N.J. 278, 285, 693 A.2d 844 (1997).
Despite the statement in Hefferin's November 9, 2000 letter that another attorney would be offered if Hayden was not acceptable, the record includes uncontested certifications to the effect that CIBA never offered the services of another attorney. Nor is it contested in the statements of "material uncontested facts." In the words of Mr. Furst, "[a]t no time did ... [CIBA] propose an attorney for the individual defendants whose representation would not require a written waiver of conflicts or permission to represent conflicting interests."
On March 9, 2001, a preliminary case management conference took place before *955 the mediator. In addition to plaintiffs' counsel, David W. Field from Lowenstein appeared on behalf of CIBA, Furst was present for Bobsein, and Wilbert represented McPherson. At that time there was a "misunderstanding" as to what CIBA had committed to do regarding the representation of Bobsein and McPherson. Furst and Wilbert believed Field agreed to reimburse them for representation of Bobsein and McPherson until the motions to dismiss Bobsein and McPherson were "determined by the court." Furst and Wilbert certified that they agreed to represent Bobsein and McPherson on that basis, and to discuss the matter again if the motions were denied.
However, Field certified he never agreed to such payment by CIBA and, in fact, was "trying to encourage counsel for Messrs. Bobsein and McPherson to turn over the defense of their clients to Lowenstein ... [and they] refused." Field also stated that Bobsein and McPherson filed cross-claims against the CIBA defendants while Lowenstein "tried to convince" Furst and Wilbert to file a motion to dismiss all of plaintiffs' claims and offered "to share" a copy of the motion which Lowenstein had drafted "in anticipation of serving as the individual counsel" for Bobsein and McPherson. Field wrote to Furst with a copy to Wilbert on May 2, 2001, explaining that Lowenstein "do[es] not believe it is necessary for ... Bobsein and McPherson to assert another cross-claim against the corporate defendants for indemnification" because "that cross-claim ha[d] already been filed in Kramer "and Bobsein and McPherson had that forum in which to proceed if they were "unable to resolve [the] issue amicably or through a private mediator as [was] previously discussed."
On May 7, 2001, Field again wrote to Furst and Wilbert requesting that they file the motions to dismiss on behalf of Bobsein and McPherson. Field advised them of the $50,000 in costs CIBA had incurred in filing answers to 519 complaints and urged that they file motions to dismiss to save filing fees and because it was warranted on the merits. Three months later, on August 21, 2001, Furst e-mailed Field and Wilbert, stating "[r]egarding the joint defense agreement, the cross-claims can be dismissed easily. We are just waiting for a complete commitment from Ciba for indemnification and counsel fees."
In response, on September 12, 2001, Field wrote to Furst and Wilbert expressing that CIBA's position has not changed on paying Bobsein and McPherson's defense costs. However, he also wrote that "it might be productive if you make a constructive and sensible proposal which we could present [to CIBA]." Field further explained that "[g]iven [CIBA's] contractual rights, we are sure the Company will not acquiesce to paying an unknown and unlimited amount of counsel fees for defendants whom it believes can and should be represented by [Lowenstein] without incurring any of that cost." In the interim, Field acknowledged that the cross-claim filed in the Kramer case could be deemed to be "filed in each additional answer."
On October 2, 2001, Furst wrote to Field stating that his "position regarding ... Bobsein's rights pursuant to the indemnification agreement is already known; it is improper for Lowenstein, Sandler to represent him. Nothing has occurred to change [his] thinking." In addition, Furst stated that "we can certainly work together, as we have, to insure there is no duplication of effort while fulfilling our responsibilities to our clients" but the dispute as to counsel fees must be resolved "promptly and finally." In the event that CIBA persisted in refusing to pay, Furst noted he could not file Bobsein's answers to the amended complaints and there would be *956 the possibility of a default because $40,000 in filing fees were required. He further noted that at the March 9, 2001 conference Field indicated CIBA committed to pay his fees, as well as Wilbert's fees, "incurred through the decision of the motions to dismiss which [Field] prepared."
Two days later Field replied, informing Furst that there was "a significant misunderstanding" because CIBA never committed to paying their fees and that it has always been CIBA's position that they will not pay the fees of personal counsel retained by Bobsein and McPherson. Field indicated the only representation he made was CIBA "would look favorably at any reasonable bill from [Furst and Wilbert] if [the motions to dismiss] were successful and ... Bobsein and McPherson were out of the cases." He noted, however, that Bobsein and McPherson filed a cross-claim in the Kramer matter and prepared to litigate until "[they] learned of the very significant fees required to file Answers to each complaint." He suggested the possibility of arbitration of the issue. As noted at the outset, however, the matters were ultimately resolved by dismissal of all cases against Bobsein and McPherson, and the counsel fee issue was presented to the court on cross motions for summary judgment.
Furst claims a total of $335,607.70 in fees and costs for 1294.8 hours for services rendered in the matter, between June 5, 2000 and October 10, 2002, by his paralegals at the rate of $90 an hour and himself at the hourly rate of $275. Wilbert claims a total of $311,774.16 in fees and costs for 1425.55 hours for services rendered between May 23, 2000 and September 9, 2002, at the rate for Wilbert of $295, and his associates of $180 and $120 an hour. While believing they are not liable for any of these costs and fees, CIBA objects to many items contained in the bills as "irrelevant," "duplicat [ive]," "repetiti[ous]," "excessive," "undocumented," "inappropriate," and otherwise not recoverable for various reasons.
The mediator's report included the following:
1. The individual defendants, [Bobsein and McPherson] are fully indemnified by the Indemnification Provision contained in the Consulting Agreements....
2. Complete indemnification does not fully resolve any actual or potential conflicts of interest that may exist between [CIBA] as the corporate defendant and [Bobsein and McPherson] as individual defendants.
3. [CIBA] did not fulfill its obligation, pursuant to the Indemnification Provision in the Consulting Agreements ... to provide conflict-free counsel to [Bobsein and McPherson].
4. [CIBA] must pay the legal fees of [Furst and Wilbert] for work done on behalf of ... [Bobsein and McPherson] in connection with the Kramer litigation....
5. [Furst and Wilbert] may continue to represent ... [Bobsein and McPherson] in connection with the Kramer litigation....
After receiving the recommendation, Judge Corodemus reviewed the issues de novo, and rendered her October 29, 2002 opinion. She concluded that:
1. Notwithstanding the consulting agreements' provision for the application of New York law, New Jersey law applies, although the result would be the same under either;
2. "Joint representation of ... Bobsein and McPherson and CIBA would create a conflict of interest [because the parties'] interests are not coextensive," *957 and "[r]epresentation by Mr. Hayden was laced with inherent conflict[;]"
3. There is a possibility "that Bobsein and McPherson could be held liable for intentional acts for which they [would not be] indemnified" in later possible cases, "where the results of this case could likely prejudice them[;]"
4. "CIBA is not absolved from its duty to defend ... Bobsein and McPherson by providing conflict-laden counsel. Instead CIBA is required to reimburse ... Bobsein and McPherson for reasonable attorneys' fees incurred in the Kramer litigation[;]"
5. Neither Bobsein or McPherson "alleged that any conflict existed between themselves thereby eliminating the need for two attorneys .... [so the] court ... disallow[ed as duplicative] 50% of the hours expended reviewing correspondence, reviewing privilege logs and conferences with judges[;]"
6. Furst and Wilbert's bills were not fully reasonable and were reduced from $335,607.70 and $311,774.16 to $212,703.33 and $198,023.66 respectively, because certain services were "excessive, duplicative and unnecessary," should have been performed at lower rates, or were performed for the Janes matter not properly before the court in this motion; and
7. Under the consulting agreements CIBA did not have a duty to indemnify Bobsein and McPherson for claims arising from their willful conduct, and "[a]ny inconsistent representations made after the fact are void[.]"
We note that, despite asserting that Furst and Wilbert could not represent Bobsein and McPherson, Lowenstein urged them to file the motion to dismiss it had prepared. While this supports the position of Bobsein and McPherson that CIBA promised to pay their fees through filing of the motion, and while there may be a factual dispute on that question, we do not decide the case on that ground.

III.
We affirm the order before us, premised on the conclusion that Bobsein and McPherson were "entitled to ... conflict-free counsel in accordance with the Rules of Professional Conduct" and ordering CIBA to reimburse Bobsein and McPherson for reasonable counsel fees, substantially for the reasons expressed in Judge Marina Corodemus' comprehensive opinion of October 29, 2002. We emphasize, however, that in our view a critical undisputed fact, as contained in several certifications in the record, is that CIBA never offered "conflict free" counsel after the services of Lowenstein and Hayden were rejected. There was a reasonable and legitimate basis for both Bobsein and Wilbert to reject the services of Lowenstein and Hayden, as each had a prior or present conflict of interest. However, CIBA acknowledged its obligation to defend and indemnify, and Hefferin even wrote it would offer another counsel if Hayden was not satisfactory. Because of the acknowledged obligation to defend and indemnify, CIBA had the right to select counsel it trusted to represent Bobsein and McPherson, provided the attorney CIBA selected was "conflict free."

A.
CIBA argues the trial judge erred by applying New Jersey law in light of the consulting agreements' express choice-of-law provision selecting the governance of New York law. CIBA contends the judge improperly used a conflicts-of-law analysis, *958 undertaking a "most significant contacts" and "governmental interest" analysis, even though the agreement specifically called for application of New York law. CIBA acknowledges that designated counsel had to be "conflict free," but argues whether the counsel it offered Bobsein and McPherson were conflict-free must be determined under New York law, not New Jersey law. It further contends that there was no conflict because Bobsein and McPherson were not exposed to personal liability for the conduct involved.
Bobsein and McPherson respond by asserting that there is no material part of the consulting agreement that is in dispute or needs to be "construed or interpreted" and, thus, no need to consult New York law, that there is no real conflict between New Jersey and New York law, and that, in any event, CIBA failed to offer truly independent counsel under the law of either state.
Our review of this issue is de novo because "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Tp. Comm. of the Tp. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). See also North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 568-69, 730 A.2d 843 (1999).
We commence our analysis with some familiar principles:
As the forum state, New Jersey's choice-of-law principles determine which law to apply. Gantes v. Kason Corp., 145 N.J. 478, 484, 679 A.2d 106 (1996); Marinelli ex rel. Marinelli v. K-Mart Corp., 318 N.J.Super. 554, 562, 724 A.2d 806 (App.Div.1999), aff'd o.b., 162 N.J. 516, 745 A.2d 508 (2000). In general, our Supreme Court has rejected the traditional choice-of-law rule of lex loci delicti (for torts) and lex loci contractus (for insurance contracts) in favor of a more flexible "governmental-interest" standard, which requires application of the law of the state with the greatest interest in, or most significant connections with, the issues raised or the parties and the transaction. Veazey v. Doremus, 103 N.J. 244, 247-49, 510 A.2d 1187 (1986)(tort litigation); State Farm Mut. Auto. Ins. Co. v. Simmons' Estate, 84 N.J. 28, 36-37, 417 A.2d 488 (1980)(insurance contract).
The first step in this choice-of-law analysis is an inquiry into whether there is "an actual conflict" between the laws of this state and another. Gantes v. Kason Corp., supra, 145 N.J. at 484, 679 A.2d 106. "Any such conflict is to be determined on an issue-by-issue basis." Veazey v. Doremus, supra, 103 N.J. at 248, 510 A.2d 1187.
[Lonza v. Hartford Acc. Co., 359 N.J.Super. 333, 342, 820 A.2d 53 (App.Div.2003) (footnote omitted).]
It appears to us that joint representation of Bobsein and McPherson and CIBA would create a conflict of interest under New York law since the interests of Bobsein and McPherson are not coextensive with CIBA's. In New York, just as in New Jersey, "[a]n attorney owes his client undivided loyalty and allegiance." Booth v. Continental Ins. Co., 167 Misc.2d 429, 634 N.Y.S.2d 650, 655 (Sup.Ct.1995). "A lawyer who represents two clients with conflicting interests by definition cannot give either client [the required] undivided loyalty. Nor are conflicting interests limited to the simultaneous representation of clients ... [P]otential conflicts may exist between former clients and current clients." People v. Longtin, 92 N.Y.2d 640, 684 N.Y.S.2d 463, 707 N.E.2d 418, 420 (1998) (citations omitted), cert. denied, 526 U.S. 1114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999). However, even if there would be *959 no conflict under New York law, we conclude that New Jersey law must control with respect to a question of practice before the courts of this state.
"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341, 614 A.2d 124 (1992). See also North Bergen Rex Transp., supra, 158 N.J. at 568, 730 A.2d 843. This view is reflected in Restatement (Second) of Conflicts of Laws § 187 (1971), which provides that the law of the state chosen by the parties will govern, "unless either":
(2) ... (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
Accord North Bergen Rex Transp., supra, 158 N.J. at 568-69, 730A.2d 843.
In Newcomb v. Daniels, Saltz, Mongeluzzi, & Barrett, Ltd., 847 F.Supp. 1244, 1251 (D.N.J.1994), an action involving a dispute over a contingent fee agreement regarding a New Jersey accident involving a New Jersey resident represented by a Philadelphia firm in action it commenced in the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey found the agreement unenforceable and "reformed" it to "comply with New Jersey Court Rule 1:21-7." Citing the Restatement and New Jersey law, Chief Judge Gerry wrote:
In order to override the choice of law of the parties to the contract under the considerations of § 187(b), a court must find: (1) that the application of Pennsylvania law would be contrary to a fundamental policy of New Jersey; (2) that New Jersey has a materially greater interest than Pennsylvania in the determination of the particular question at issue; and (3) that under the general choice of law considerations of § 188 ..., New Jersey law would apply.
[Id. at 1248.]
See also Instructional Sys. Inc., supra, 130 N.J. at 341-42, 614 A.2d 124; Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J.Super. 666, 672-73, 506 A.2d 817 (App.Div.1986). Thus, to properly perform the appropriate analysis it is necessary to set forth, in pertinent part, the general choice of law considerations of § 188 of Restatement (Second) of Conflict of Laws:
(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.[5]
*960 [Restatement (Second) of Conflict of Laws § 188(2) (1971).]
In Bedwell & Sons, Inc. v. Geppert Bros., Inc., 280 N.J.Super. 391, 395-96, 655 A.2d 483 (App.Div.1995), app. dis. 143 N.J. 481, 672 A.2d 1165 (1996), we affirmed the Law Division's holding that New Jersey law should apply to an indemnity agreement rather than the state in which the agreement had been entered and in which the parties to the agreement were located. Judge Baime noted New Jersey's "paramount interest in the remediation of its waste sites," and explained that New Jersey's "urgent concern for the health and safety of its citizens extends to assuring that indemnification agreements allocating financial responsibility are effectively enforced." Id. at 396, 672 A.2d 1165. The rationale behind our holding was New Jersey's compelling interest "in determining the availability of funds for the cleanup of hazardous substances within its borders." Ibid.
In this case, Judge Corodemus relied on Bedwell and properly held that New Jersey law was the appropriate law to apply to the consulting agreements, "even though the locale of the creation of the Consulting Agreements was New York," and the agreements provide that New York law controls. She did so because the underlying litigation:
was originally filed in Ocean County, New Jersey and transferred to Middlesex County, New Jersey[; t]he risks of litigation that ... Bobsein and McPherson face[ ] resulted from activities that occurred at the Ciba-Geigy plant in Toms River, New Jersey.... [; and] New Jersey has a clear interest in applying its laws to provide compensation for New Jersey residents and remedying environmental contamination within New Jersey borders.
In State v. Davis, 366 N.J.Super. 30, 840 A.2d 279 (App.Div.2004), this Part (with two of us on the panel) recently "recognize[d] that the court maintains an independent interest in assuring that conflict-free representation occurs, since the existence of conflict undermines the integrity of the court." Id. at 38, 840 A.2d 279. In Davis, we also recognized that "the existence of an unadjudicated conflict is also detrimental to the independent interest of the court to be free from future unjustified attacks over the fairness of the proceedings." Ibid. Finally, we noted that "[a]dherence to the Rules of Professional Conduct serves not only a client's interests but also the `broader societal interest [in] the integrity of the trial process itself.'" Ibid. (quoting State v. Jimenez, 175 N.J. 475, 484-85, 815 A.2d 976 (2003)). Moreover, lawyers appearing in New Jersey courts are subject to discipline here if they have conflicts or undivided loyalties. See State v. Lasane, 371 N.J.Super. 151, 852 A.2d 246 (App.Div.2004).
Thus, the application of New Jersey law, as opposed to the contractually chosen law, is compelling, and the requisites to application of New Jersey law are satisfied. "[T]he application of [any inconsistent New York] law would be contrary to a fundamental policy of New Jersey [and] New Jersey has a materially greater interest than [New York] in the determination of the particular question at issue...." Newcomb, supra, 847 F.Supp. at 1248. Moreover, New Jersey has an "independent interest in assuring that conflict-free representation occurs, since the existence of conflict undermines the integrity of the *961 [New Jersey] court." Davis, supra, 366 N.J.Super. at 38, 840 A.2d 279. And, as noted by Judge Corodemus, under the general choice of law considerations of § 188, New Jersey law would apply because the underlying litigation took place in New Jersey, the place of performance of the contract was New Jersey, most if not all activities involved took place in New Jersey, and the CIBA plant at issue in the litigation is in New Jersey. Newcomb, supra, 847 F.Supp. at 1248. See Restatement (Second) of Conflict of Laws § 188(2).
Moreover, even when parties have adopted an otherwise valid choice of law provision in an agreement, that provision will not govern when an issue is procedural. North Bergen Rex Transp., supra, 158 N.J. at 569, 730 A.2d 843 (award of counsel fees is a matter of procedure); Heavner v. Uniroyal, Inc., 63 N.J. 130, 135, 305 A.2d 412 (1973). And as Bobsein and McPherson put it, "questions involving who can practice before the New Jersey courts involve matters of sound judicial administration and hence are matters of practice rather than questions of substantive law."

IV.
We have little difficulty concluding that, under New Jersey law, summary judgment was properly entered based on a finding that the designated counsel would not provide satisfactory conflict-free representation. On appeal, this court uses the same standards to determine if summary judgment should be granted as the lower court used. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 530-40, 666 A.2d 146 (1995); Antheunisse v. Tiffany & Co., 229 N.J.Super. 399, 402, 551 A.2d 1006 (App.Div.1988), certif. denied, 115 N.J. 59, 556 A.2d 1206 (1989). Accordingly, we must decide whether there is a genuine issue as to a material fact. Prudential Prop. Ins. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998); R. 4:46-2(c).
It is undisputed that CIBA offered two different counsel for Bobsein and McPherson and that they never consented to the representation of either or otherwise waived any real or apparent conflicts. The counsel CIBA initially offered, Lowenstein Sandler, has represented CIBA in the past and was CIBA's counsel in the instant litigation. It is also undisputed that the firm of the only other counsel offered, Joseph A. Hayden, Jr., had represented CIBA in a directly related matter, the insurance coverage litigation involving many of the same underlying claims. See In re Envtl. Ins. Declaratory Judgment Actions, supra, 149 N.J. at 285, 693 A.2d 844. In addition, Hayden had previously represented Dr. Ellis, the immunized former employee of CIBA, in the criminal case resulting in the guilty pleas of Bobsein and McPherson. See State v. CIBA-GEIGY Corp., 222 N.J.Super. 343, 345, 536 A.2d 1299 (App.Div.1988). See also State v. CIBA-GEIGY Corp., 247 N.J.Super. 314, 589 A.2d 180 (App.Div.1991), app. dis. in light of guilty plea, 130 N.J. 585, 617 A.2d 1213 (1992). Hayden first negotiated criminal immunity for these matters for Ellis and then represented Ellis when he testified against Bobsein and McPherson, after which Bobsein and McPherson were indicted and ultimately pled guilty.
The indemnity provision in the consulting agreements excepts from CIBA's indemnity obligation claims involving any "willful misconduct." Both Bobsein and McPherson pled guilty to a fourth degree criminal offense in the prior criminal action involving conduct of CIBA, its employees and officers. In this circumstance, a "conflict of interest" exists with respect to both Lowenstein and Hayden *962 because Dr. Ellis and other co-employees could have been called to testify or to point the finger at Bobsein and McPherson, thereby triggering the exception to the duty to indemnify. Under the agreement in question, as Bobsein and McPherson note, no writing "expressly states nor clearly implies that the stated exceptions for `willful misconduct'" was ever "stricken from the Agreement." Moreover, as Judge Corodemus pointed out, the consulting agreements specifically provided they can only be amended in writing, and punitive damages were sought in the complaints. These facts are dispositive irrespective of whether New Jersey public policy would prohibit CIBA from ultimately deciding to indemnify Bobsein and McPherson for an award of punitive damages based on a finding of willful misconduct. Certainly, under the indemnifications in question, CIBA did not have to do so. See City of Newark v. Hartford Accident & Indemnity Co., 134 N.J.Super. 537, 546-47, 342 A.2d 513 (App.Div.1975).
In any event, while the allegations of the complaint must be deemed to control for purposes of the duty to defend, cf. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173-74, 607 A.2d 1255 (1992); Danek v. Hommer, 28 N.J.Super. 68, 77-79, 100 A.2d 198 (App.Div.1953), aff'd, 15 N.J. 573, 105 A.2d 677 (1954); F.S. v. L.D., 362 N.J.Super. 161, 166-70, 827 A.2d 335 (App.Div.2003), willful misconduct was alleged and the duty to indemnify presents a different question. Hartford Accident & Indemn. Co. v. Aetna Life & Cas. Inc. Co., 98 N.J. 18, 22, 483 A.2d 402 (1984). Thus, Bobsein and McPherson were entitled to independent counsel because of the potential dispute with CIBA over the scope of indemnification, and the fact that the case has now ended satisfactorily for Bobsein and McPherson does not control whether they were obligated to accept designated counsel while the litigation was ongoing. See Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., supra, 98 N.J. at 24-26, 483 A.2d 402; Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 388-91, 267 A.2d 7 (1970). See also Aquino v. State Farm Ins. Co., 349 N.J.Super. 402, 410-11, 793 A.2d 824 (App.Div.2002) (counsel selected by insurer had conflict because of allegations of negligent and intentional conduct).
Under New Jersey law joint representation of Bobsein and McPherson and CIBA would create a conflict of interest since the interests of Bobsein and McPherson are not coextensive with CIBA's. See Lasane, supra, 371 N.J.Super. at 161, 852 A.2d 246. "[T]he Rules of Professional Conduct ... control generally the responsibility of attorneys confronted with conflicts of interests in the representation of clients." In re Petition for Review of Opinion 552, 102 N.J. 194, 198-99, 507 A.2d 233 (1986). These rules "are designed to assure that, in representing a client, counsel's judgment is not impaired by divided loyalties or other entangling interests." Jimenez, supra, 175 N.J. at 484-85, 815 A.2d 976; Lasane, supra, 371 N.J.Super. at 164, 852 A.2d 246; Hill v. N.J. Dep't of Corrections, 342 N.J.Super. 273, 308-09, 776 A.2d 828 (App.Div.2001), certif. denied, 171 N.J. 338, 793 A.2d 717 (2002); R.P.C. 1.7.
In our view, Judge Corodemus properly held that Lowenstein could not adequately represent Bobsein and McPherson and CIBA because its "obligation to CIBA would have required taking a position which would have been adverse to the effective defense of ... Bobsein and McPherson" because they "blame CIBA for any harm which has come to plaintiffs in the underlying action," whereas plaintiffs asserted "concerted action." The trial judge also properly held that there was a real possibility "that Bobsein and McPherson could later be named as defendants in *963 another suit in which they would not be indemnified for willful conduct, where the results of this case could likely prejudice them."
Judge Corodemus also properly held that Hayden could not properly represent Bobsein and McPherson. Hayden's prior representation of Ellis was adverse to Bobsein and McPherson's interest in the prior litigation, and his representation of Bobsein and McPherson in this matter would be adverse to the interests of Ellis and CIBA, his former clients. Hence, his representation in this case was precluded by R.P.C. 1.9.[6]
Accordingly, we hold that under New Jersey law, Judge Corodemus properly held that the designated counsel could be rejected by Bobsein and McPherson, and that, under the circumstances, they could seek their own counsel when CIBA subsequently failed to offer any acceptable representation, and that CIBA is required to reimburse them for their reasonable attorneys' fees.

V.
CIBA argues that the mediator had no authority to consider the question of CIBA's obligation to pay Bobsein's and McPherson's counsel fees and that the trial judge erred in considering the mediator's findings. The first case management order in this case was entered on March 28, 2001. It provided that "[u]ntil a Special Master is appointed, the Court shall hear all motions .... [and i]f a Special Master is appointed, ... [a]ll discovery motions shall be heard initially by the Special Master and all substantive motions by the Court." This case management order also set forth that "the Special Master shall provide the parties with a written Recommendation on the resolution of any non-disposition motion." However, a Special Master was never appointed in this case. Rather, the assignment judge appointed a mediator pursuant to R. 1:40-11.
CIBA claims it objected to the mediator hearing the counsel fee issue and making the recommendation because the issue is "substantive" and, in any event, no Special Master was appointed. The mediator nevertheless chose to issue a recommendation, stating that pursuant to "informal arrangements," the court has "on other occasions" had a mediator "change[ ] roles," act as a Special Master, and hear issues requiring determination when so directed by the court.
The trial judge noted in her decision that the parties agreed to submit this issue to a mediator. However, as no agreement was reached on the issue, there should have been no report on this subject. See R. 1:40-4(f). Nevertheless, the judge explained that "[a]s with all prior involvement of [the mediator], if agreement was not reached, this court would hear the motion de novo," and as no agreement was reached on this issue, she considered it de novo. We find no basis for disturbing the judge's de novo holding that the failure to provide conflict-free counsel warranted an award of counsel fees based on the fact Bobsein and McPherson became obligated to retain their own attorneys when no "conflict free" counsel was offered.

VI.
On their cross-appeal, Bobsein and McPherson argue that the trial court erred by holding they should have retained joint counsel because neither alleged that a conflict existed between the two of them, and thus erred by reducing their attorney fee *964 awards by fifty percent. The trial court concluded:
This court finds that much of Messrs. Furst's and Wilbert's fee application in some instances resulted in the duplication of effort and an unreasonable number of hours expended. As neither Messrs. Furst nor Wilbert raised any conflict between representation of Messrs Bobsein and McPherson collectively, attempts should have been made at coordination. Although both parties billed for conferences with one another, no effort was made by either party to mitigate against costs. These co-defendants were placed on notice by Ciba's letter of November 9, 2000 that Ciba would offer them representation by one attorney, Mr. Hayden. Messrs. Bobsein and McPherson rejected that offer because of the conflict of interest in representation by Mr. Hayden. However, neither co-defendant ever requested that each be represented by separate counsel. Messrs. Bobsein and McPherson never alleged that any conflict existed between themselves thereby eliminating the need for two attorneys. Messrs. Bobsein and McPherson hired separate counsel which resulted in both attorneys performing identical tasks for their clients. This court will not award the duplicative effort of counsel. Accordingly, this court will disallow 50% of the hours expended reviewing correspondence, reviewing privilege logs and conferences with judges.[7]
The fees requested were reduced based on findings of duplicative effort by the respective counsel. The judge also reduced the fees requested because "a significant amount of research and drafting done by Messrs. Wilbert and Furst could have been easily performed by the associates at Wilbert Montenegro & Thompson," and because work which can be done by associates at lower rates than partners should not be billed at the partner's rate.
We do not have enough before us in the record to conclude that the defenses of Bobsein and McPherson could not be adverse, or that the conduct of only one, but not the other, could be deemed "willful." The record demonstrates that they had different roles at different times. For example, their "statement of material uncontroverted facts" states that McPherson, but not Bobsein, conducted seminars that "highlighted disposal practices at the plant that could, or did, cause contamination of the land, air and/or groundwater." Once CIBA declined to provide "conflict free" counsel, both had a legitimate concern that a judgment could be entered against him. Therefore, for the reasons we have previously developed, both were entitled to retain independent counsel with undivided loyalty to represent him. Cf. Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 204, 536 A.2d 243 (1988); Davis, supra, 366 N.J.Super. at 34, 840 A.2d 279.
That does not mean, however, that independent counsel had to "reinvent the wheel" at every turn or did not have to make some reasonable effort to coordinate the defenses and mitigate costs. It was reasonable for the trial judge to consider a fee award in light of possibly unnecessary or excessive charges, including work effort that might have permitted counsel to rely, or substantially rely, on the work *965 filed or prepared by CIBA's counsel or for the individual's counsel to work together to the extent reasonably possible, to reduce or minimize expenses.[8]
However, we are not dealing with the problem of fees for the duplication of effort by a partner and associate in the same firm and, in any event, the right to independent counsel is the polestar. Each defendant was entitled to have his independent counsel and to be assured that his interests were adequately protected. Thus, while the award of attorney's fees generally rests within the sound discretion of the trial court, see, e.g., Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 443-44, 771 A.2d 1194 (2001), here the judge mistakenly applied her discretion by reducing the fee award merely because Bobsein and McPherson did not retain joint counsel.
Accordingly, we remand for reconsideration of the fee award in light of all appropriate criteria. See, generally, R.P.C.1.5.

VII.
Finally, Bobsein argues that the trial judge erred by eliminating all interest from Furst's bill on the ground that this was "not the type of case where the awarding of [a] reasonable attorneys' fee is a `traditional element of damages in the specific cause of action such as occurs in a civil malicious prosecution or abuse of process case.'" There was no basis developed for the amount of interest requested, and the award of fees was the equivalent of unliquidated damages. We find no abuse of discretion. North Bergen Rex Transport, supra, 158 N.J. at 575-76, 730 A.2d 843; Musto v. Vidas, 333 N.J.Super. 52, 74, 754 A.2d 586 (App.Div.2000) (award of prejudgment interest is subject to trial judge's broad discretion). As the Supreme Court has said, "absent a controlling contractual provision, permitting prejudgment interest on attorneys' fees would be contrary to our strong public policy disfavoring shifting of attorneys' fees." North Bergen Rex Transport, Inc., supra, 158 N.J. at 576, 730 A.2d 843. In this case, the consulting agreements called only for indemnification and defense costs and made no mention of prejudgment interest on attorneys' fees, although that was undoubtedly because they did not contemplate that either defendant would have to retain his own attorney.

VIII.
We affirm the trial court's orders awarding the costs of defense of both Bobsein and McPherson, but remand for a reevaluation of the attorney's fee awards and for entry of judgment against Ciba-Geigy based thereon.
NOTES
[1] As will be further developed, an order apparently had already been entered dismissing these defendants from the Janes case, and the trial judge so noted in her October 29, 2002 formal opinion.
[2] These facts are undisputed and come from Judge Corodemus's October 29, 2002, opinion. Neither of the indictments are in the record before us.
[3] In her October 29, 2002 opinion, under the heading "Janes plaintiffs," Judge Corodemus wrote that Bobsein's and McPherson's "counsel did manage to have plaintiffs dismiss their actions against their clients."
[4] The agreements in the record before us are not executed but there is no dispute that Bobsein and McPherson each signed one.
[5] Section 188(1) dealing with contract interpretation generally points to the state which has "the most significant relationship to the transaction and the parties under the principles stated in § 6."
[6] We rely on the rules as they existed at all relevant times during this litigation. Comparato v. Schait, 180 N.J. 90, 96, 848 A.2d 770 (2004). See R.P.C. 1.9(b).
[7] The judge's opinion states that the Janes matter was dismissed as to Bobsein and McPherson, but that the fee application was not properly before her at that time. The judge disallowed fees related to the Janes case on that basis, and we have no basis to disturb that ruling. Moreover, the 50% reduction appears to relate only to a portion of the work. But in light of our remand we do not develop any details about the reduction and leave the entire subject for reconsideration.
[8] The record makes clear that counsel for Bobsein and McPherson did work together in drafting some documents and certifications, and apparently relied on the motion to dismiss drafted by CIBA's counsel. Bobsein and McPherson filed a joint brief and appendix on this appeal.