**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2586
_____

PHARMACIA CORPORATION n/k/a PFIZER, INC.,
Appellant

v.

ARCH SPECIALTY INSURANCE COMPANY; TWIN CITY FIRE INSURANCE
COMPANY; LIBERTY MUTUAL INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2-18-cv-00510)
U.S. District Judge:  Honorable Esther Salas
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 16, 2024
_____

Before: SHWARTZ, MATEY, and PHIPPS, <u>Circuit Judges</u>.

(Filed: January 19, 2024)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Pharmacia Corporation appeals the District Court's order granting summary judgment declaring that one of its excess insurers, Twin City Fire Insurance Company, did not owe a duty to pay Pharmacia's settlement and defense costs from a shareholder class action. Because Pharmacia has failed to adduce evidence that satisfies a condition precedent necessary for Twin City's insurance policy to attach, we will affirm.

I

Pharmacia, a pharmaceutical drug manufacturer, purchased a $200 million directors and officers insurance tower[1] from thirteen companies through an insurance broker. The first layer of the tower consisted of a $25 million primary policy issued by National Union Fire Insurance Company of Pittsburgh, Pa (the "Primary Policy"). The next twelve policies provided excess insurance totaling $175 million.[2] Twin City sold

---

[1] An insurance tower is a plan in which "a primary insurer respond[s] first to any covered loss, and excess insurers respond[] in a predetermined order if the loss exceeds the coverage provided by the primary policy." John F. O'Connor, Caveat Settlor: Insurance Coverage Settlements and the Triumph of Policy Language Over Precedent, 79 ALB. L. REV. 101, 102 (2016).

[2] Allied World Assurance Company sold Pharmacia the sixth-layer excess policy (the "Allied World Policy"). Clause X, entitled "Choice of Law," provides that "[t]his policy shall be construed and enforced in accordance with the internal laws of the State of New York (with exception of the procedural law required by Clause IX [which requires disputes arising under or relating to the policy be resolved under Bermuda's arbitration act], which shall be construed and enforced in accordance with the laws of Bermuda.)" App. 1022-23. Twin City's policy does not contain a choice-of-law provision, but it provides that it "is subject to the same warranties, terms, conditions, definitions, exclusions and endorsements . . . as are contained in . . . the policy of the Primary Insurer, together with all the warranties, terms, conditions, exclusions and limitations contained in or added by endorsement to any Underlying Excess Policy(ies)." App. 1044. For the reasons set forth herein, we need not decide whether this provision incorporates Allied World's choice-of-law clause.

Pharmacia the eighth-layer excess policy (the "Policy"), which provided $10 million in coverage and specified that "liability for any loss shall attach to [Twin City] only after the Primary and Underlying Excess Insurers shall have [(1)] duly admitted liability and [(2)] . . . paid the full amount of their respective liability." App. 601.

In 2003, Pharmacia shareholders filed a putative class action against the company, alleging that it artificially inflated its stock by misrepresenting the results of a clinical drug study.[3] Garber, et al. v. Pharmacia Corp., et al., No. 03-cv-01519 (AET) (TJB) Compl. ECF No. 1, (D.N.J.). After ten years of litigation, the case settled,[4] and Pharmacia incurred approximately $207 million in defense and indemnity costs. Pharmacia then provided Twin City proof that the excess carriers ahead of it in the insurance tower paid their policy limits[5] and asked Twin City to provide coverage. Twin City declined.

Pharmacia sued Twin City, seeking, among other things, a declaration that the Policy obligates Twin City to indemnify Pharmacia for the losses incurred in the shareholder action. The District Court granted Twin City's motion for summary judgment, denied Pharmacia's cross-motion, and dismissed the case with prejudice. The Court found that: (1) the plain language of the Policy required the other excess insurers to admit liability as a condition precedent for coverage to attach; (2) six of them had

---

[3] Pfizer, Inc. subsequently acquired Pharmacia.
[4] By the time of the settlement, the Primary Policy was exhausted, and the first-layer excess insurer had taken over defense costs.
[5] Five of these carriers also expressly disclaimed any admission of wrongdoing or liability in their respective indemnification agreements with Pharmacia.

disclaimed liability, and (3) as a result, a condition for coverage was not satisfied. Pharmacia appeals.

II[6]

. A federal court sitting in diversity applies the choice-of-law rules of its forum state. See SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 204 (3d Cir. 2022) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941)). Absent a relevant, actual conflict between New Jersey and New York law, we need not undertake a choice-of-law analysis or decide whether to enforce a choice-of-law provision. See In re Accutane Litig., 194 A.3d 503, 517 (N.J. 2018) ("If there is not 'an actual conflict' in the 'substance of the potentially applicable laws' of the two jurisdictions, then 'there is no choice-of-law issue to be resolved[.]'" (quoting P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453, 460 (N.J. 2008)).[7] An actual conflict arises "when the application of one or

---

[6] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of the District Court's order granting summary judgment. Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 871 n.3 (3d Cir. 2015). We apply the same standard as the District Court, viewing facts and drawing all reasonable inferences in the non-movant's favor. Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We review the District Court's interpretation of the Policy de novo. Regents of Mercersburg Coll. v. Republic Franklin Ins., 458 F.3d 159, 163 (3d Cir. 2006).

[7] See also Shannon v. B.L. England Generating Station, No. 10-cv-4524, 2013 WL 6199173, at *6 (D.N.J. Nov. 27, 2013) ("Under New Jersey law, the first step in determining whether to enforce a contractual choice-of-law provision is determining whether an actual conflict exists between the laws of the two states." (citing Kramer v. Ciba-Geigy Corp., 854 A.2d 948, 957 (N.J. App. Div. 2004)); see also ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 858 n.5 (3d Cir. 1994) (observing that when "no conflict appears in the relevant case law," there is no need to perform a choice-of-law analysis)

4

another state's law may alter the outcome of the case." Accutane, 194 A.3d at 517 (internal quotation marks and citations omitted).

No conflict exists here. New Jersey and New York apply the same general principles of contract interpretation to construe insurance policies. Olin Corp. v. Am. Home Assurance Co., 704 F.3d 89, 98 (2d Cir. 2012); Pennbarr Corp. v. Ins. Co. of N. Am., 976 F.2d 145, 151 (3d Cir. 1992). Specifically, courts (1) "give effect to the intent of the parties as expressed in the clear language of the contract," Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co., 702 F.3d 118, 122 (2d Cir. 2012) (applying New York law); see also Barila v. Bd. of Educ. of Cliffside Park, 230 A.3d 243, 255 (N.J. 2020) ("The plain language of the contract is the cornerstone of the interpretive inquiry[.]");159 MP Corp. v. Redbridge Bedford, LLC, 128 N.E.3d 128, 130 (N.Y. 2019) (explaining that courts enforce "agreements negotiated at arm's length by sophisticated, counseled parties" "according to their plain language); (2) "may not make a different or better contract than the parties themselves saw fit to enter into," Pennbarr, 976 F.2d at 151; see also N.J. Lawyers' Fund for Client Prot. V. Stewart Title Guar. Co., 1 A.3d 632, 638 (N.J. 2010) (same); Roundabout Theatre Co. v. Cont'l Cas. Co., 302 A.D.2d 1, 6 (N.Y. App. Div. 2002) ("[C]ourts should refrain from rewriting the agreement . . . to accomplish [their] notions of abstract justice or moral obligation.") (internal quotation marks and citations omitted)); and (3) may avoid a literal construction of the words of a contract only if that interpretation "'defies all bounds of common sense,'" Carematrix of

---

(citing Lucker Mfg., A Unit of Amclyde Engineered Prods., Inc. v. Home Ins. Co., 23 F.3d 808, 813 (3d. Cir. 1994))).

5

Mass., Inc. v. Kaplan, No. cv-05-3173, 2006 WL 8439674, at *2 (E.D.N.Y. June 21, 2006) (quoting Reiss v. Fin. Performance Corp., 279 A.D.2d 13, 18 (N.Y. App. Div. 2000)); see also Quinn v. Quinn, 137 A.3d 423, 429 (N.J. 2016) ("[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result."). Because there is no conflict, we need not resolve the choice of law question, see, e.g., On Air Entm't Corp. v. Nat'l Indem. Co., 210 F.3d 146, 149 (3d Cir. 2000, and can rely on the laws of the two states interchangeably, Lucker Mfg., A Unit of Amclyde Engineered Prods., Inc. v. Home Ins. Co., 23 F.3d 808, 813 (3d. Cir. 1994).

Applying these principles, the Policy here unambiguously imposes two distinct conditions precedent for coverage to attach. Specifically, Pharmacia must show both that the insurers ahead of Twin City in the tower have (1) "duly admitted liability and [(2)] . . . paid the full amount of their respective liability." App. 601. The use of the word "and" demonstrates that both conditions must be met. See Pine Belt Chevrolet, Inc. v. Jersey Cent. Power & Light Co., 626 A.2d 434, 441 (N.J. 1993) (noting that "[t]he word 'and' carries with it natural conjunctive import while the word 'or' carries with it natural disjunctive import" (quoting State v. Duva, 470 A.2d 53, 55 (N.J. Super. Ct. Law Div. 1983))); see also Progressive Ne. Ins. Co. v. State Farm Ins. Cos., 81 A.D.3d 1376, 1378 (N.Y. App. Div. 2011) (declining to replace a contract's use of "the conjunctive 'and'

6

[with the] disjunctive 'or'" because doing so would have a "strained, unnatural and unreasonable" effect).[8]

Here, Pharmacia has failed to show that both conditions to trigger Twin City's coverage were met. Regardless of whether the other insurers in the tower paid their policy limits, the record does not demonstrate that all of those insurers admitted liability.[9, 10] Because Pharmacia has failed to establish at least one condition precedent, the District Court correctly declined to declare that Twin City owes Pharmacia coverage.[11]

---

[8] Cf. John M. O'Quinn, P.C. v. Lexington Ins. Co., 906 F.3d 363, 372 (5th Cir. 2018) (construing a similar exhaustion provision crafted with the disjunctive "or" to permit coverage to attach upon either admission of liability or issuance of payment, i.e., "[coverage] shall not attach unless and until the [u]nderwriters of the [u]nderlying [p]olicy/ies shall have paid or have admitted liability or have been held liable to pay").

[9] Moreover, Pharmacia has identified no case that applies "functional exhaustion" to a situation like the one here, where the insured is required to show both that the other excess carriers admitted liability and that they paid the policy limit.

[10] Pharmacia contends that the District Court improperly considered the other insurers' settlement agreements for the proposition that they disclaimed liability in violation of FED. R. EVID. 408. See Appellant Br. at 46-49. We need not, however, rely on the settlement agreements because, even without consideration of those agreements, Pharmacia has failed to show that all the insurers ahead of Twin City in the insurance tower admitted liability, as required by the Policy's exhaustion provision. Pharmacia's assertion that an insurer's payment of a policy limit alone constitutes an admission of liability is speculative as other reasons may cause a carrier to pay its policy limit, such as avoiding litigation. In addition, to infer that payment of the full policy is a concession of liability would render the admission-of-liability condition superfluous. In any event, the District Court did not err by considering the settlement agreements, as Rule 408 "allows evidence of . . . agreements of compromise to prove a consequential, material fact in issue other than validity of the claim or its amount," such as disclaimers of liability. 2 Weinstein's Federal Evidence § 408.08 (2015).

[11] This conclusion is consistent with JP Morgan Chase & Co. v. Indian Harbor Ins. Co., 98 A.D.3d 18 (N.Y. App. Div. 2012). There, a court applying Illinois law interpreted an identical exhaustion provision contained in a Twin City policy to unambiguously impose two conditions precedent for Twin City's coverage to attach: (1)

7

## III

For the foregoing reasons, we will affirm.

---

admitting liability and (2) paying the full amount of their liability. <u>Id.</u> at 21. In holding that coverage did not attach, the court noted that "[t]he first condition was not met because [an excess] insurer . . . in the [] tower" expressly disclaimed "'an admission of liability'" in a settlement agreement. <u>Id.</u> at 21-22.