**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-2219
_____

RONALD A. SCHIAVONE, individually and
as Trustee of the Ronald A. Schiavone Living Trust;
RAYMOND J. DONOVAN

v.

DRAGADOS, S.A.; DRAGADOS INVERSIONES USA, S.L.;
SCHIAVONE CONSTRUCTION CO.; AND JOHN DOES 1-10;
NEWARK REAL ESTATE HOLDINGS, INC.

RAYMOND J. DONOVAN,

Appellant/Cross-Appellee

_____

Nos. 16-2439
_____

RONALD A. SCHIAVONE, individually and
as Trustee of the Ronald A. Schiavone Living Trust;
RAYMOND J. DONOVAN

v.

DRAGADOS, S.A.; DRAGADOS INVERSIONES USA, S.L.;
SCHIAVONE CONSTRUCTION CO.; AND JOHN DOES 1-10;
NEWARK REAL ESTATE HOLDINGS, INC.

DRAGADOS, S.A.; DRAGADOS INVERSIONES USA, S.L.;
NEWARK REAL ESTATE HOLDINGS, INC. ,

Appellees/Cross-Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2-09-cv-00409)
District Judge: Hon. Katharine S. Hayden
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 27, 2017
_____

Before: McKEE, VANASKIE, and RENDELL, *Circuit Judges*.

(Opinion filed: April 3, 2018 )

_____

OPINION *
_____

MCKEE, *Circuit Judge*

This case stems from the sale of a large construction company and the subsequent settlement of various claims with the U.S. Attorney's Office involving misrepresentations that had been made pertaining to the use of minority, women, and disadvantaged-owned business enterprises (MWDBE) on government-sponsored construction contracts. For the reasons that follow, we will affirm the order of the District Court.

**I.**

This action involves claims of breach of a Stock Purchase Agreement (SPA) for the sale of Schiavone Construction Company (SCC) by its two 50% shareholders—Plaintiff-

Appellants Raymond J. Donovan and Ronald Schiavone[1]—to Defendants-Appellees Dragados.[2] Donovan sued Dragados under the SPA for (1) a $10,000,000 installment payment (plus interest) owed as part of the purchase price for Donovan's 50% SCC stock interest; and (2) $442,346 for Donovan's share of an SCC tax refund. Dragados filed a counterclaim alleging Donovan breached the representations and warranties in the SPA. It claimed as damages (1) the $22,370,000 settlement payment to the U.S. Attorney's office in connection with a Non-Prosecution Agreement signed to settle claims that SCC committed mail fraud when it fraudulently reported its use of MWDBE subcontractors on four construction projects involving the Metropolitan Transit Authority (MTA) and the New York City Department of Environmental Protection (DEP) and (2) attorney's fees incurred by SCC and Dragados in connection with the related investigation. The District Court found that Donovan breached SPA representations and awarded Dragados damages for breach of contract based on SCC's settlement payment and attorney's fees, offset by the $10,000,000 installment payment. The District Court entered a final judgment of $5,241,615.18 in favor of Dragados.

Donovan timely appealed eleven District Court judgments and orders, effectively appealing most of the trial court's findings. Dragados cross-appealed, arguing that,

---

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] On the first trial day, Schiavone and Dragados stipulated to the dismissal of all pending claims in consideration for an undisclosed settlement they had reached the week before.

[2] Dragados consists of three companies—Dragados, S.A.; Dragados Inversiones USA, S.L; and Newark Real Estate Holdings, Inc.—that comprise a Spanish construction conglomerate.

though the District Court correctly held that Donovan breached the SPA, the District Court improperly reduced Dragados' damage award, as Donovan was responsible for 100% (not 50%) of the damages that flowed from his misrepresentations, and the District Court failed to properly account for the Schiavone settlement.

## II.[3]

Donovan asserts that the District Court improperly found he had breached specific SPA provisions, and that the settlement resulted from those breaches. He also challenges the calculation of damages. Dragados claims only that it should have been awarded more money. We address each argument in turn.

### A. Breach of the SPA's "No Material Violation of Applicable Law" and "Books and Records" Representation (Section 4.9(a))

SPA § 4.9(a) states that SCC and its Shareholders "are, and have been at all times, in compliance in all material respects with all applicable Laws[,]" and that "[a]ll Books and Records . . . of SCC . . . have been maintained, in all material respects, accurately and in accordance with applicable Law."[4]

---

[3] The District Court had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3232(a)(1). This Court has jurisdiction over this matter under 28 U.S.C. § 1291. In a bench trial appeal, we review the trial court's findings of fact for clear error and its conclusions of law *de novo*. *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009).

[4] A1599. "Books and Records" are defined as:

. . . the originals or copies of all customer lists, policy information, insurance contract forms, administrative and pricing manuals, claim records, sales records, underwriting records, financial records, compliance records, data files and other materials prepared for or filed with Governmental Authorities regulating the business of SCC and its Subsidiaries, Tax records and other books and records. . . .

4

Donovan argues that the District Court erred in holding that he breached the SPA, because (1) the underlying laws and regulations did not apply to SCC; (2) the District Court relied on the testimony of Lorraine D'Angelo, which was inadmissible; and (3) there was no causal connection between the alleged breach of Section 4.9(a) and Dragados' claimed damages.[5]

In evaluating Dragados's breach of Section 4.9(a) claim, the District Court explained that the alleged breach in this case was SCC's repeated submission of "utilization plans and progress reports to the MTA and DEP regarding M/W/DBE participation on Jobs 506, 510, and 511 that contained incorrect information."[6] The District Court went on to find that

> Donovan breached Section 4.9(a) when he represented that SCC complied with all applicable law—as the term is broadly defined in the SPA—despite imputed knowledge to the contrary. Moreover, by acknowledging that corrective letters were filed following the audit, Donovan is conceding that at the time the reports were filed they contained inaccuracies in violation of the 'Books and Records' provision of Section 4.9(a) of the SPA.[7]

The District Court explained that the "evidence fully support[ed] Dragados[,]" which asserted that "attorneys' fees and settlement costs—incurred in avoiding a criminal indictment—directly stem from SCC's pre-closing inaccurate M/W/DBE plans and reports which violated the law as is defined in the SPA."[8]

---

*Id*. at 1582.
[5] Appellant's Br. at 22–31.
[6] *Donovan v. Dragados, S.A.*, No. 09-409 (KSH)(CW), 2013 WL 3336755, at *19 (D.N.J. June 28, 2013).
[7] *Id.* at *20.
[8] *Id*. at *21.

5

Putting aside the "applicable Law" argument,[9] we turn first to the District Court's factual finding that SCC submitted inaccurate reports to the MTA and DEP. To find clear error, we must conclude that "although there is evidence to support [a finding]. . . on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed."[10] We are left with no such conviction after reviewing the relevant evidence in this case.

Though Donovan argues that "[t]here is no record evidence proving a single SCC progress report was materially inaccurate in violation of an 'applicable Law,'" the record is to the contrary.[11] There is evidence that the SCC progress reports were materially inaccurate—namely, the correction letters SCC submitted to the DEP and MTA that reduced the MWDBE participation credit by millions of dollars, based on an audit revealing that the original progress reports claimed participating credit for MWDBE enterprises that did not provide any services or subcontracted their work to non-MWDBE companies.[12] Donovan points to no evidence that the correction letters were false or unreliable. Thus, the record does not support a finding of clear error.

---

[9] We need not decide whether SCC violated an "applicable Law" to find that it breached § 4.9(a) of the SPA. That section required SCC to verify it had maintained its books and records both "accurately" and "in accordance with the applicable Law." A1599. Because we hold that the District Court did not err in finding that SCC breached this provision by submitting inaccurate records, we do not consider any breach that may have occurred based on the "applicable Laws" portion of § 4.9(a).

[10] *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[11] Appellant's Reply Br. at 29 (emphasis in original).

[12] A3381–97 (July 15, 2009 letter to DEP re: Project No. CRO-311); A3398–407 (July 15, 2009 letter to DEP re: Project No. CRO-313); A3408–31 (Sept. 29, 2009 letter to MTA re:

Since the record supports the conclusion that SCC's books and records were inaccurate, it follows that those inaccuracies constituted a breach of Section 4.9(a), and resulted in damages, just as the District Court found.

**B.** **Breach of the "No Known Investigation" Representation (Sections 4.8(a) and 4.9(c))**

We next turn to the SPA's "no known investigation" provisions, where Donovan guaranteed that no material investigations were pending and that he had not received notice or otherwise had knowledge—except as set forth in the Disclosure Letter—that SCC was under investigation.[13]

Donovan argues that, to prove a breach of SPA Sections 4.8(a)[14] and 4.9(c),[15] Dragados was required to establish that Donovan had actual knowledge that the MTA

---

Contract No. A-35976 – South Ferry Design and Construction); A3432–37 (Feb. 24, 2010 letter to DEP re: Project No. CRO-313).

[13] A1598–99 (SPA §§ 4.8(a) and 4.9(c)).

[14] Section 4.8(a) of the SPA states:

> SCC has furnished to [Dragados] a complete list of each litigation, suit, action, claim, filed charge, arbitration, complaint or other proceeding . . . that has been instituted or, to the Knowledge of SCC, threatened against, by or affecting SCC. . . the outcome of which, if determined adversely to SCC, PPR or the Shareholders, would be reasonably expected to have a Material Adverse Effect. Except as set forth in Section 4.8(a) of the Disclosure Letter, (i) there is not Action by or before any Governmental Authority pending or, to the Knowledge of SCC, threatened, against, by or affecting SCC, . . . except for such Actions as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect on SCC, and (ii) no material investigation or inquiry by or before any Governmental Authority is pending or, to the Knowledge of SCC, threatened against SCC[.]

[15] Section 4.9(c) of the SPA states:

> Except as set forth in Section 4.9(c) of the Disclosure Letter (i) none of SCC, any of its Subsidiaries, PPR or the Shareholders has received any written notice from any Governmental Authority that, or otherwise has any Knowledge that, (x) alleges any material noncompliance (or that SCC or any

7

Office of Inspector General was investigating SCC for material noncompliance with "applicable Law," and that Dragados failed to do so.[16]

None of Donovan's arguments negate the fact that the SCC received a subpoena from MTAOIG in January 2007, and no one informed Dragados of the existence or receipt of that subpoena.[17] This subpoena included a request for "Documents related to Women Business Enterprise, Minority Business Enterprise or Disadvantaged Business Enterprise status" of certain subcontractors.[18] Moreover, the subpoena was discussed at an SCC Executive Committee Meeting days after it was received:

> Rick informed that we have received a subpoena from the MTA/IG with respect to a DBE subcontractor . . . and a DBE trucker . . . on the South Ferry Project. . . . The only weakness is that [the DBE trucker] used other non-DBE truckers to help fulfill his contract with us. The Rules recognize only DBE truckers for participation purposes.[19]

Neither the subpoena nor this discussion was disclosed to Dragados prior to the purchase in clear breach of SPA Sections 4.8(a) and 4.9(c).

---

of its Subsidiaries is under investigation or the subject of an inquiry by any such Governmental Authority for such alleged noncompliance) with any applicable Law or (y) could reasonably be expected to result in a material fine, assessment, or cease and desist order, or the suspension, revocation or limitation or restriction of any SCC Permit, and (ii) except for the payment of fines and penalties incurred in the ordinary course for infractions that are not material in nature or amount and for routine and customary corrective measure undertaken at Projects in response to site inspections in the ordinary course, none of SCC, any of its Subsidiaries, PPR or the Shareholders . . . has entered into any agreement or settlement with Governmental Authority with respect to its non-compliance with, or violation of, any applicable Law.

[16] Appellant's Br. 34–45.

[17] *See* A3021 (Jan. 4, 2007 Subpoena issued to SCC).

[18] A3022.

[19] A3031(Jan. 9, 2007 Meeting Minutes – Executive Committee Meeting).

8

Dragados demonstrated that its losses were the "natural and probable consequences" of Donovan's failure to disclose.[20] Thus, the District Court correctly held that "[t]here can be no question that the 2007 Subpoena and the knowledge of SCC's Executive Committee that SCC had overstated DBE participation on certain jobs are significant facts that any purchaser would want to know before committing to spend $150,000,000."[21]

### C. Finding SCC's $22,370,000 Settlement Payment was Dragados's Parent Loss

Donovan next argues that the District Court committed clear error in finding that Dragados (rather than SCC) actually paid the $22.37 million settlement, and that SCC was therefore entitled to be indemnified for that amount.[22] We disagree.

A review of the SPA's applicable provisions "makes clear that *any* Parent Indemnified Person, including Dragados and SCC, may recover for any losses including settlements incurred or sustained by *any* Parent Indemnified Person."[23] The SPA defines "Parent Losses" as "any and all actual losses, liabilities, damages, judgments, settlements and expenses . . . incurred by any of the Parent Indemnified Persons" caused by three enumerated breaches,[24] and later defines "Parent Indemnified Persons" as a group that

---

[20] *Marina Dist. Dev. Co., LLC v. Ivey*, 223 F. Supp. 3d 216, 221 n.6 (D.N.J. 2016) (quoting *Totaro, Duffy, Cannova and Co., LLC v. Lane, Middleton & Co., LLC*, 921 A.2d 1100, 1107 (N.J. 2007)).

[21] *Donovan*, 2013 WL 3336755, at *18.

[22] Appellant's Br. 45–46.

[23] *Id.* at *23 (emphasis in original).

[24] A1586.

9

includes both Dragados and SCC.[25]  Thus, if SCC sustains a loss, Dragados may recover.

That is precisely what happened here. The fact that SCC wrote the check for the

settlement does not defeat Dragados' indemnification claim. There is no clear error.

### D.      Reasonableness of $22,370,000 Settlement

Donovan next argues that the District Court failed to conduct an independent

review of the $22.37 million settlement with the U.S. Attorney's Office and erred in

concluding it was reasonable. Donovan argues that, had the District Court applied the

"legally correct method of calculating the MTA's and NYCDEP's possible MWDBE

fraud loss, the actual loss would probably be $0 or close to $0."[26] As appellee points out,

the argument ignores the SPA's plain language, the basic principles of contract law, and

the fact that Donovan's cited cases have no bearing on this case.

As the District Court noted, Dragados needed to establish a breach of the SPA and

injuries that were the natural and probable result of the breach.[27] As explained above,

Dragados satisfied each of these elements. As for the amount of damages, the SPA

requires Donovan to indemnify Dragados for "all actual . . . settlements . . . which are

caused by, arise from or are related to . . . any breach [by Donovan of] any representation

---

[25] A1637 (SPA Article X, Section 10.1(a) defines "Parent Indemnified Persons" as "Parent, each of its Subsidiaries (including SCC and its Subsidiaries), and each of their respective directors, officers, managers and employees.").
[26] Appellant's Br. at 55.
[27] *Donovan*, 2013 WL 3336755, at *24.

or warranty made . . . pursuant to Article IV[.]"[28] We have just discussed the ways in which Donovan breached Article IV, and have already affirmed the District Court's finding that the government's criminal investigation—and Dragados's $22.37 million settlement payment to resolve that investigation—were "caused by, ar[ose] from, or . . . related to" those breaches.[29]

Donovan's argument that the District Court failed to independently review the reasonableness of Dragados's settlement—which was a result of negotiations with the federal government to resolve criminal claims and avoid an indictment—is meritless because there is no such requirement under New Jersey law. Donovan's claim to the contrary relies on cases specific to the insurance context.[30]

### E.     Objections to the District Court's Calculation of Damages

Both parties object to the District Court's calculation of damages. Donovan argues the amount was too high and Dragados claims it was too low.  We review for clear error.[31]

Neither party has pointed us to an instance of clear error on the part of the District Court, nor do we find, based on our own independent review, any clearly erroneous conclusions stemming from the District Court and Special Master's exhaustive review of costs and calculation of damages in this case.[32]

---

[28] A1637.

[29] A1637.

[30] Appellant's Br. at 47 (citing *Vargas v. Hudson Cty. Bd. of Elecs.*, 949 F.2d 665, 674 (3d Cir. 1991); *Fireman's Fund Ins. Co. v. Imbesi*, 826 A.2d 735, 749 (N.J. App. Div. 2003), *certif. denied*, 834 A.2d 406 (2003)).

[31] *See Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 113 (3d Cir. 1993).

[32] *See* A176–273 (almost 100-page long Special Master Report and Recommendation).

## III.

For the foregoing reasons, we will affirm the order of the District Court.